SQUIRE BLAZIER, PLAINTIFF IN ERROR, V. JOHN D. JOHNSON AND PIER BENSON, DEFENDANTS IN ERROR.

1. **Action to Recover Real Property:** EQUITABLE DEFENSE TO. In an action by the holder of the title in fee for the recovery of real property, the defendant may interpose an equitable defense. But to avail him his equity must be superior to that of the plaintiff.

2. ———: ———. The plaintiffs purchased, paid for, and obtained from the state a deed in fee simple to two lots in Lincoln. The defendant claimed that under the law regulating the disposal of these lots he himself was entitled to a conveyance, on paying their appraised value, which was much less than the plaintiffs had paid. *Held*, 1. That a tender by him to the state of the appraised value, after the sale and conveyance to the plaintiffs, was unavailing. 2. That in asserting his equity, if he had it, he should have made and proved a tender to the plaintiffs of at least that amount, together with interest thereon from the time of their purchase, under the rule that he who seeks equity must do equity.

3. **Statute of Frauds:** SALE OF INTEREST IN LAND. As between the parties to it, and their privies, a contract for the sale of land, or of any interest therein, need not be either witnessed or acknowledged to be effective.

4. **Statute of Limitations.** As against the state, the rule of the English common law°expressed by the maxim, *nullum tempus occurrit regi,* obtains, and the statute does not run.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*James E. Philpott* and *James L. Caldwell,* for plaintiff in error. Evidence shows Blazier made a good tender. Refusal to accept cannot prejudice him. *Lytle v. State of Arkansas,* 9 How., 314. Patent to Benson passed no title as against possession and claim of Blazier. *Stark v. Starrs,* 6 Wall., 402. The right granted under the act of 1869 is analagous to a homestead right and is not assignable. *Dawson v. Merrille,* 2 Neb., 118. Fraud may be shown. *Franklin v. Kelley,* 2 Neb., 79. 1 Greenleaf Ev., sec. 284. *Huston v. Walker,* 47 Cal., 484. Patent for land reserved from sale is void. *Morton v. Nebraska,* 21 Wall., 660. The action is barred. *Yetzel v. Thoman,* 17 Ohio State, 132. *Horbach v. Miller,* 4 Neb., 46. *Smilie v. Biffle,* 2 Penn. State, 52.

*A. G. Scott* and *J. R. Webster,* for defendants in error. The action is not barred. *Morton v. Green,* 2 Neb., 451. *Lessee of Dresback v. McArthur,* 7 Ohio, 146. *Duke v. Thomson,* 16 Id., 34. Equity would require not merely a tender of the sum paid June 3, 1869, by defendants in error, but interest to the time of tender and taxes paid. *Stalnaker v. Morrison,* 6 Neb., 363. *Pettit v. Black,* 8 Neb., 52. Blazier tenders nothing, and has no equity. Patent is paramount evidence of title and will prevail, except an older title of the same character be proven. *Bagnell v. Broderick,* 13 Pet.,

436, 449–51.   *U. S. v. Stone*, 2 Wall., 525, 532.   *Shipley v. Cowan*, 91 U. S., 330, 338.

LAKE, J.

This was an action for the recovery of two lots in the city of Lincoln.  In his answer the plaintiff in error conceded that the legal title was in the defendants in error, but pleaded in bar of their claim, *first*, the statute of limitations, and, *second*, that he himself was well entitled to the lots by virtue of his occupancy and improvement thereof under the act of the legislature of February 15th, 1869: "For the relief of persons who have improvements upon state lots in the town of Lincoln."  Laws 1869, 247.   And in this behalf he avers that the state officers having the disposal of these lots, in disregard of his rights, fraudulently sold them to the defendants in error, who were purchasers with notice of his equities.   This sale was made and the title passed from the state by deed to Pier Benson, one of the defendants in error, April 4th, 1870.

In ejectment this title from the state by deed in fee should of course prevail, unless overborne by the superior equity of the plaintiff in error.   It is now settled law, and conceded to be so by the defendant's counsel, that a defendant in ejectment may interpose an equitable defense to defeat a recovery by the holder of the legal title.   But to avail him, his equity must of course be superior to that of the holder of the fee.   Has Blazier shown such equity in himself, or even made such a case by his proofs as would support a finding by a jury that he had?   Most clearly not, as we think.

In addition to the fact of Blazier's settlement upon and improvement of these lots, of which there is no controversy, his answer sets forth that he tendered to the proper state officers the amount at which they had been valued under the act above referred to.  But it

will be noticed that the time of making this tender is n)t stated. In his testimony, however, he said, "it was the last of April or the first of May" that he made it, which was at least several days after the title had passed from the state by the conveyance to Benson. This tender, therefore, even if it were made, of which there is considerable doubt under the testimony, was a useless act, for the state had already received payment and had no title to convey.

In this condition of things respecting the lots, to assert his equity, if he had it, against the defendants in error, Blazier should have made and proved a tender to them of at least the appraised value of the lots, which the answer conceded the defendants in error had paid, together with interest on that amount from the time of payment. But he did not do this. He has made no offer to reimburse them for any portion of their expenditure of fifteen hundred dollars in paying for the lots of which he now seeks to deprive them by what he claims is a superior equity. In other words, he demands the judicial establishment of his ownership of the property as against those whom he admits have bought and paid for it, without the payment of a single dollar by himself. To accord him this, it seems to us, would require a total disregard of the common maxim, that one who seeks equity must be willing and ready to do equity. In this particular we find both the answer and the evidence adduced by the plaintiff in error to be decidedly wanting.

But there is still another equally potent objection to this claim of equity by the plaintiff in error. It is shown beyond all question, that prior to the time of the conveyance by the state to Benson, the plaintiff in error sold his entire interest in the lots to one Kahn, who in turn transferred it to the defendants, whereby they were enabled, on making the payment of fifteen

hundred dollars, which amount the answer admits they paid, to procure from the state the conveyance of the legal title through a deed from the officers appointed to make it. It is now said that of this money only three hundred and fifty dollars found its way into the state treasury. This may be so, but it is a matter not involved in this controversy, and upon which we can express no opinion. At all events, whatever the truth may be concerning this part of the transactions respecting these lots, it cannot affect the rights of Johnson and Benson, who were doubtless purchasers in good faith. Even if Kahn, and certain state officials, or either of them, retained the residue, as is suggested, that should not be permitted to prejudice those not shown to have been parties to the fraud. It is a matter that does not concern the issues with which we are here dealing. Again, it is possible that Blazier was wronged in his dealing with Kahn, although it is not clear from the evidence before us that he was, but even if he were, it must be remembered that it was through this dealing—this sale of Blazier's interest in the lots—that the defendants in error were induced to make their purchase, and to part with their money.

The evidence shows that the assignment of Blazier's interest in the lots to Kahn was in writing. Counsel urged against it, however, that it was not witnessed and acknowledged, and therefore passed no title. It is true that such an instrument would not convey the fee, but this Blazier did not have to convey, it was then in the state. Being in writing and signed by him, it fully answered the requirements of the statute of frauds, and was effective to pass all the interest he then had. As between the parties to it, and their privies, a contract for the sale of land, or of any interest therein, need not be either witnessed or acknowledged to be effective.

As to the plea of the statute of limitations, that, very clearly, was bad. This statute required an adverse occupancy of ten years duration, before the bringing of the action, to constitute a bar. It is clear that while the state owned the lots—although Blazier had taken possession—the statute did not run. As against the state the rule expressed in the English common law by the maxim, *nullum tempus occurrit regi*, obtains. And as before shown, according to the answer, which in this particular was sustained by the evidence, the state parted with the title April 4th, 1870, and the action was commenced in May, 1878, so that, at most, the statute could have run only a little over eight of the ten years required.

Being of opinion that no defense was shown either by the answer or the evidence as against the legal title held by the defendants in error, the judgment must be affirmed.

JUDGMENT AFFIRMED.

COBB, J., having been of counsel below, did not sit.