ALTON D. WHITE ET AL. V. BESSIE WHITNEY.

FILED APRIL 30, 1903.   No. 12,791.

1. **Ejectment:** SET-OFF. In an action of ejectment an offset for board and maintenance of the plaintiff by the defendants can not properly be introduced; it being pleaded merely as an account and not shown to have any direct connection with plaintiff's cause of action for possession of land and for rents and profits.

2. **Motion to Strike:** DEMURRER. Where a motion to strike out such matter on the part of the plaintiff has been overruled by the court and exceptions taken to such action, the subsequent sustaining of a demurrer to the same matter on the ground that it does not constitute a defense, is not prejudicial error.

3. **Cross-Demand:** DEMURRER: REMITTITUR. Error in sustaining a demurrer to an allegation of taxes paid, made by way of cross-demand, is without prejudice where plaintiff subsequently remits from the amount of her recovery the full alleged amount of such taxes.

4. **Demurrer:** ERROR WITHOUT PREJUDICE. Error in sustaining a demurrer to a counter-claim for improvements in an action for rents and profits as well as for possession of land, is without prejudice where it appears from the record that all such improvements were permitted to be shown to the jury under the name of necessary repairs, and the jury were instructed to allow a reduction of damages in the amount of all necessary repairs.

5. **Instruction:** PLEADING. The fact that the jury were told that an "equitable right" would be no defense against a "legal right" of the plaintiff, if it was found that she had one, is not prejudicial error where no equitable right to the premises is either pleaded or offered to be proved,

6. ———: ———. An instruction which tells the jury that they shall allow "rental value" of the premises as "damages for withholding possession" is not prejudicial error, although the petition of plaintiff makes no claim for any damage aside from rents, issues and profits.

ERROR to the district court for Boone county: JAMES N. PAUL, DISTRICT JUDGE. *Affirmed.*

*James W. Hamilton* and *Henry E. Maxwell,* for plaintiffs in error.

*I. J. Dunn* and *H. C. Vail, contra.*

HASTINGS, C.

This is an action in ejectment. Each defendant below brings error in eighty-one assignments. Fortunately it is not necessary to consider each of these separately. The first two briefs filed on behalf of the defendants complain only of error in sustaining demurrers to the second, third and fourth paragraphs of the answer, and of error in giving the tenth instruction, to the effect that if the jury should find the plaintiff was entitled to the premises she would be entitled also to damages for their withholding from the death of her mother, and that the measure of such damages would be the rental value of the premises, less whatever was actually necessary to keep the premises in a good and habitable condition; that any amount necessarily paid for repairs should be deducted, and also any money shown to have been paid to the plaintiff during her minority, if it had been assented to and allowed by her since she became of age, and also such sums as had been paid to her since she became of age on account of the property.

In a third and supplemental brief error is claimed also in instruction numbered 4, to the effect that this action in ejectment related only to legal and not equitable rights, and, if plaintiff had a legal right, no equitable right in the defendant would bar her recovery. It is claimed that this instruction, together with instruction numbered 10, pre-

cluded the jury from making any allowance in their ver-
dict as to damages for the fact that plaintiff resided
with the defendants on this property from February,
1892, until September, 1895.   It is contended that the
instruction must have operated to the prejudice of de-
fendants.

It is conceded by the defendants that so far as concerns
the possession of the property, the verdict is right; that
it was plaintiff's land and that she was entitled to re-
cover it.   In her petition she had asked, not only for the
land, but for rents and profits from February 8, 1892, to
the commencement of the action, in the sum of $1,150.
The petition was filed January 6, 1900.   The claim was
for the use of these premises from the death of plaintiff's
mother.   It is not denied that plaintiff did reside with
the defendants upon this property from February, 1892,
until some time in September, 1895.   The property seems
to have been the homestead of plaintiff's mother.   De-
fendants are, the half sister of plaintiff, and the sister's
husband.   They were apparently living with the mother
upon the property at the time of the mother's death, and
continued to live there with the plaintiff for something
over three years.

The answer of the defendants denied all of the plain-
tiff's allegations, and set out as a "cross-demand," that
on or about February 8, 1892, they were left in possession
of the premises described in the petition, by the death of
plaintiff's mother, who had up to that time occupied it
as a homestead; that the defendants from that time for-
ward controlled and used the property; that plaintiff
was her father's only child, and at that time was between
13 and 14 years of age; that she continued to reside with
the defendants, and was supported and maintained by
them until March, 1898; that during that time the de-
fendants furnished plaintiff maintenance, care and sup-
port of the value of $1,825, which she promised to repay
them, but no part of which has been paid.   This was the
second paragraph, and to which a demurrer was filed and

sustained. The third paragraph alleges the payment of all the taxes and assessments levied and assessed against the property from 1892, to the amount of $110, and that no part has been repaid. The demurrer was sustained to this paragraph also. The fourth paragraph alleges that they kept the property in repair and made such improvements thereon as were necessary, and in making such repairs and improvements had expended $625, and that they were of the reasonable value of $625, and no part thereof had been paid. A demurrer to this was also sustained. The plaintiff moved to strike out paragraphs 2, 3 and 4 from the answer, on the ground that they presented questions which could not properly be tried in connection with plaintiff's right of possession. Before the motion was ruled upon, an amended answer was filed, not, however, differing very materially from the former one, but merely adding some allegations that the improvements placed upon the property were placed there in the belief of the ownership of an interest in it by Viola White, defendant. The same day the motion was overruled, the demurrers were filed to these paragraphs 2, 3 and 4, which were sustained, as above stated. The jury returned a verdict in favor of the plaintiff for the possession of the premises and for $900 damages. Motion for new trial was filed on the ground that the verdict was not sustained by the evidence; was contrary to law; damages were excessive; error in the instructions by the court; error in refusing instructions; and error in sustaining the demurrers to paragraphs 2, 3 and 4 of the answer. One hundred and ten dollars of the damages were remitted because of the alleged payments of taxes and assessments, and judgment entered for the recovery of the premises and the $790.

The question is, substantially, as to the right to present the defense of the furnishing of care, support and maintenance of the plaintiff during the years from 1892 to 1898 as an offset or counter-claim to plaintiff's demand for rents.

The matter of taxes seems sufficiently covered by the remittitur. The question as to permanent improvements can be settled in a subsequent proceeding, and the costs of necessary repairs the jury were instructed to deduct in determining the rents and profits.

Counsel for defendants are not contending that they are entitled to a recovery in this action, but they do claim that defendants are entitled to set off against plaintiff's claim for rents and profits, contract indebtedness which they held, as they allege, against the plaintiff. They urge in the first place that this question as to the right to offset could not be raised by demurrer, and that it not being otherwise raised was waived. We are not able to take this position. The plaintiff promptly raised the question of the propriety of trying defendants' claim for support and maintenance in this action by moving to strike it from the answer. This motion, as we have seen, was overruled. To that overruling the plaintiff excepted, and the question was raised again by demurrer, and in that form was sustained by the court. If one who is sued in ejectment may not set up a contract claim by way of set-off against the plaintiff's claim for rents and profits, this action of the trial court, while perhaps irregular, must be held to be error without prejudice. The plaintiff had raised the question and was not assenting to any waiver of her rights in this respect.

The defendants contend, citing the case of *Seibert v. Baxter*, 36 Kan. 189, 12 Pac. 934, that the claim for rents and profits in an action of ejectment must be held to be an action sounding in contract and not in tort. As the Kansas court say (p. 191) : "We think the action for rents and profits must be treated as one based upon an implied contract." It therefore applies the three years' statute of limitations, whereas, if it were a proceeding in trespass, the limitation would be two years. They also cite *Holmes v. Davis*, 19 N. Y. 488, 495, saying that the measure of damages in this class of cases is the same as would prevail in assumpsit for use and occupation. They

also cite Sedgwick & Wait, Trial of Title to Land (2d ed.), sec. 649, as saying that this action, recovery of mesne profits in ejectment, has been divested of many of the peculiarities of an action of trespass; that it has acquired the characteristics of an action *ex contractu;* and also Newell, Ejectment, page 609, as saying: "The action (for mesne profits) is no longer treated as sounding in tort, but rather as one founded upon an implied contract." We suppose, however, that it is an established doctrine in this as in most of the other states, that assumpsit for use and occupation of land only arises where the relation of landlord and tenant has been created either expressly or by implication. *Skinner v. Skinner,* 38 Neb. 756.

In *Janouch v. Pence,* 3 Neb. (Unof.) 867, the second point in the syllabus is as follows: "Assumpsit for use and occupation is founded upon a contract creating a tenancy, and will only lie where the relation of landlord and tenant exists."

As the relation of landlord and tenant is expressly negatived in the action of ejectment, and it is a wrongful withholding which is recovered for, it would seem impossible to hold that the claim for mesne profits in such an action sounds in contract. It does not seem to us desirable that the action for the recovery of real estate should be complicated with a general settlement of accounts between the parties. The question of the right of possession of real estate is, under our law, treated as so peculiarly and solely for a jury, that the statute has provided that each case may be twice submitted to that tribunal. That alone would seem to be sufficient to raise a somewhat broad distinction between actions of ejectment and ordinary actions on contract. The fact that the question of mesne profits may be joined, and for its joinder an express provision is made, would seem impliedly to exclude from this action any contest over general matters such as may be raised by claims of set-off. The whole question of set-off and counter-claim is one of statute, and regulated by

statute. *Davis v. Morton, Galt & Co.,* 4 Bush (Ky.) 442, 96 Am. Dec. 309.

We do not think that section 104 of the Code of Civil Procedure, in providing that set-off should only be pleaded in an action founded on contract, meant to include the claim for mesne profits in ejectment among the actions on contract. Counsel's citations from text writers and opinions as to the extent to which it is simulated to a claim *ex contractu* only serve to emphasize to our minds the fact that it is in truth an action of another kind. Counsel urge, however, that in any event this defense must be entertained as a counter-claim. In their brief counsel support this only by general expressions taken from cases relating to widely different matters, such as a counter-claim for waste against a mortgagee in possession. An examination of the answer reveals merely that the claim is set up, together with the fact of possession of the premises after the mother's death. That the maintenance and support of plaintiff was in any way connected with the possession of the property is not pleaded. From the answer itself it could not be learned even that the parties at any time after the mother's death resided on the land. It merely appears that defendants were residing there at the mother's death, and that plaintiff resided with them and was supported by them till 1898. From the evidence it appears that she was on the premises till 1895. It seems clear, however, that there is nothing in this answer which shows this claim for $1,825 for support to arise out of the holding possession of this land, or to be connected with it, except as it was held by the same parties. We think, therefore, that the trial court was right in refusing to consider this claim for maintenance, and if it did so somewhat irregularly, by sustaining a demurrer to it as a defense, its action should be still upheld, as well as its refusing to admit evidence relating to this claim. That the allegations as to taxes paid were a good defense, *pro tanto,* to the claim for rents and profits, there is no doubt. As before stated, the plaintiff

finally admitted them by remitting the full amount of
them as alleged from her recovery of damages. The error
in sustaining the demurrer seems to have been cured by
such action.

The fourth answer and cross-demand was as follows:

"That for further answer and by way of cross-demand
against the plaintiff the defendants allege that during the
time they supported, maintained, educated and cared for
the plaintiff in their home and up to the present time, and
during the time said Viola White has owned said un-
divided interest in said property as aforesaid, while they
have controlled and used said property, as alleged in par-
agraph 2 hereof, they have kept said property in repair,
and made such improvements thereon as were necessary
for the enjoyment and use of the property, and in making
such necessary repairs and improvements they have ex-
pended on the property the sum of six hundred twenty-
five ($625) dollars, and the same were and are of the
reasonable value of that sum, and were made in good faith,
and in reliance on such ownership of said defendant Viola
White, and no part thereof has been repaid to the de-
fendants."

The evidence discloses that no permanent improvements,
aside from what are by defendants described as reason-
able repairs, were made after the mother's death. The
evidence as to these repairs seems to have been fully taken,
presumably, under the denial of rents and profits, and as
going to reduce their amount. Probably defendants would
be entitled to counter-claim for improvements as against
plaintiff's claim for rents and profits. Plaintiff claims
that the relief given under the occupying claimant's act
(Compiled Statutes, ch. 63, Annotated Statutes, 10259-
10269) is exclusive. No authority is cited as to this point
by either party, and in such investigation as we have been
able to give it, we do not find a decision directly in point.
The weight of modern authority, however, seems to be in
favor of the allowance of a counter-claim for improve-
ments in actions for mesne profits at common law. 17

Century Digest, col. 2600. It seems pretty clear that the right to offset improvements against rents and profits exists independently of statute. *Porter v. Doe,* 10 Ark. 186. The occupying claimant's law is not in terms exclusive. As to any pre-existing right, it should be held cumulative, unless a contrary intention is apparent. *Keith v. Tilford,* 12 Neb. 271. We think, therefore, that the trial court was in error in sustaining the demurrer to this part of the answer. It does not seem, however, that the judgment should be reversed on this ground. The trial court seems to have admitted all the evidence as to the changes and improvements made during the plaintiff's ownership as being necessary repairs, and so going to reduce the net rents. The defendants, therefore, got the benefit of them in proof. They would be still entitled to set them up under the occupying claimant's act, if they can show they fairly come within it, and were not to be considered simply as repairs. The record seems to establish that the error in refusing them to be pleaded and proved as a formal counter-claim was not prejudicial to defendant. They are all alleged as necessary to the use of the premises, and the jury were told to allow all such in reduction of damages. Defendant White swears to about $300 or $400 worth of such repairs, including fences and outbuildings.

It remains to consider the alleged errors as to the two instructions. The fourth one, which is complained of in the supplemental brief of defendants, is as follows:

"The jury are instructed that in an action of ejectment, it is only the legal rights of the parties, as distinguished from their equitable rights, that the jury have a right to consider. In this case, if the plaintiff shows a legal title to the premises in controversy, as explained in the following instructions, then no equitable rights of defendants will bar the plaintiff's right of recovery."

In our opinion the abstract error in this instruction, of saying that an equitable right would be no defense to the action, can not have produced harm, because no equitable defense existed. Some attempt was made to prove an

adoption of Viola White by plaintiff's father, and so to
show a right of defendant. It did appear that Mrs. White
was brought up in Dr. Whitney's family, and passed as his
daughter and under his name, and was considered and
treated in the family as a full sister, but no legal adoption
was shown, and plaintiff's right to the land is now con-
ceded.

It is insisted that because the court did not define an
"equitable right," we are at liberty to presume that the
jury assumed that it meant such reduction of damages
as would result from the fact that plaintiff lived and was
supported in defendant's family on these premises from
February, 1892, to September, 1895. But we have con-
cluded that the boarding and maintenance of plaintiff
by defendants in the manner alleged can not properly
come into this action. There is neither allegation nor
proof of any joint possession. The premises were occupied
by defendants and their family, of whom plaintiff, then a
child not quite 14, was one. Defendant Alton D. White
testifies fully to his own entire control of the premises dur-
ing the whole time. It seems hardly possibly that any
harm was done by telling the jury that an "equitable
right" would be no defense where none is claimed to exist.

The remaining error of which complaint is made is the
giving of instruction numbered 10, as follows:

"You are also instructed that if you find from the evi-
dence in this case that the said Bessie Whitney was the
owner of the premises described in said plaintiff's petition,
and that she was entitled to the possession of the same,
and that said premises have been wrongfully detained
from her, then the said Bessie Whitney would be entitled
to recover damages for the wrongful withholding of said
premises from her possession from the date of the death
of her mother, provided you find from the evidence that
said property had been wrongfully kept from her posses-
sion by the defendants, and that the measure of such dam-
ages would be the fair rental value of said premises less
whatever was actually necessary in the way of expenses

to keep said property in good habitable condition; and if
you should find from the evidence that there had been
expenditures by the defendants in this case, for the keep-
ing of said premises in repair, then you would deduct that
amount from the amount of damages, you would also de-
duct from the amount of her damages such amount of
money, if any has been shown to have been paid to the
plaintiff during her minority, if the same has been as-
sented to and been allowed by her since she has become of
age, and also such sums as have been paid her since she
has become of age, if you should find from the evidence
that any such have been paid her, for the damages of the
alleged wrongful withholding of said property."

It is objected to this instruction that whereas the stat-
ute allows the joinder by plaintiff in this action of a claim
for "damages for withholding the same and the rents and
profits of the same," that no "damages for withholding"
were claimed, but only rents and profits; that in submit-
ting the question of "damages" at all, the trial court was
in error.    It is conceded that it gives as the measure of
such damages the rental value, but the fact that it is de-
nominated "damages for withholding" is urged as pre-
judicial.    Counsel do not explain, and we are unable to
see, how it affected the amount of the verdict that the
trial court used one name instead of another, if it gave
the true rule.    No proof had been attempted as to any
damages, except "rental value," and the jury were told to
allow nothing more.

The other objection is more serious.    It is that the in-
struction should have permitted the jury to deduct the
value of improvements, as well as needed repairs.    As we
have before indicated, in passing on the action of the court
in sustaining the demurrer, we think this claim is sound.
We repeat, however, that all the evidence was submitted
as showing "necessary repairs"; that the occupying claim-
ant's act is still available to defendants, if they have any
permanent improvements to their credit.    We have not
reached this conclusion without a good deal of hesitation,

as, in our opinion, the defendants should have been permitted to prove their repairs and improvements as a counter-claim, if they so desired, and it was error to refuse to let them do so. They did, however, finally introduce their proof in reduction of rents, and we think the record shows they were not prejudiced by the ruling. There is no claim that the verdict is not within the evidence.

It is recommended that the judgment of the district court be affirmed.

KIRKPATRICK and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.