J. ARTHUR TILLSON, ADMINISTRATOR, APPELLEE, V. CHESTER HOLLOWAY, APPELLANT.

FILED NOVEMBER 12, 1913.   No. 18,064.

1. **Appeal:** TRIAL DE NOVO. When in an action of ejectment the defendant alleges an equitable title to the land and right of possession thereunder, and all other defenses have been eliminated, the trial of the issue so presented is essentially the trial of an action in equity, and, upon appeal, this court will try the issue *de novo*, "without reference to the conclusion reached in the district court." Code, sec. 681*a*.

2. ——: ——: CREDIBILITY OF WITNESSES. When several witnesses who disagree as to an important fact have testified in the pres-

ence of the trial judge, and the court has had an opportunity to observe their manner and the many circumstances that tend to give confidence or arouse distrust as to the reliability of their testimony, this court will take into consideration the estimate of the trial court as to the reliability of the evidence.

3. EVIDENCE: LETTERS. A letter of the then owner of the legal title, written 26 years ago in pencil upon coarse brown paper, in which it appears that some words have been retraced and some figures rewritten, under the circumstances mentioned in the opinion, is considered of little, if any, value as evidence.

4. ———: EQUITABLE TITLE TO LAND. Evidence to establish an equitable title to land, as against the legal title, must be clear and satisfactory. The evidence in this case is examined and sufficiently quoted in the opinion to show its general character, and held insufficient to establish an equitable title.

5. EJECTMENT: EQUITY. When the owner of real estate is indebted to his son for money loaned, and puts the son in possession of the real estate upon the mutual understanding and agreement that the son shall have the possession and use of the land until settlement between them, and after many years the father dies without having made such settlement, the devisees and heirs of the father will not be allowed in equity to recover possession of the land without accounting for and payment of the amount due the son.

6. Limitation of Actions. In such case the statutes of limitation have no application either to the right of the devisees and heirs to possession of the land or to the claim of the son to reimbursement for the money loaned to his father.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*H. M. Sinclair* and *W. D. Oldham,* for appellant.

*Fred A. Nye* and *J. Arthur Tillson, contra.*

SEDGWICK, J.

This action was begun as an action in ejectment by the administrator of the estate of Achsah Holloway, deceased, to recover possession of 320 acres of land in Buffalo county. The defendant answered, among other things, alleging an equitable right to the land, and upon his former appeal from an adverse judgment this court held

(90 Neb. 481.) that the trial court had failed to determine the issue presented by this equitable defense and the case was remanded for that purpose.  It was held that all other issues pleaded in the case had been correctly determined in favor of the plaintiff therein.  Upon the second trial in the district court for Buffalo county much of the evidence upon the former trial was again introduced by the parties, with other evidence, and the court found the issues in favor of the plaintiff and rendered a judgment for the possession of the land, from which the defendant has again appealed.

The legal title to the land was in the name of Ira Holloway, the defendant's father, and upon his death the title passed by his will to his wife, Achsah Holloway, the defendant's mother.  The defendant alleged that his father had sold the land to him in consideration of money which he had loaned to his father.  The details of his answer are set out in the former opinion and it is unnecessary to repeat them here.  About 30 years ago the defendant's father, who was a resident of Ohio, and shortly after removed to Michigan where he resided until the time of his death, purchased the land in question, and also procured a timber claim upon an adjoining quarter section.  Afterwards the timber claim was transferred to the defendant, and he has resided thereon for nearly 30 years.  It appears from the evidence that the defendant's father was indebted to several of his children in a considerable amount.  His indebtedness to the defendant in the sum of at least $1,500 appears to be established by the preponderance of the evidence.  There is some evidence tending to show that his father owed the defendant an additional amount, possibly $3,000 more.  The defendant took possession of the land in dispute in 1884 or 1885 and has ever since been in possession thereof.  Soon after taking possession of the land he fenced the same and has since made some other improvements thereon.  He never was called upon for any rent until after the death of his mother in 1907.  The defendant was not allowed to testify to any transactions or

oral agreements between himself and his father and mother, being incompetent under section 329 of the code. There are nine children and heirs of his father and mother, and there appears to have been an unfortunate disagreement among them. One of his brothers testified as to the indebtedness of his father to the defendant, and Mrs. Hambrook, one of his sisters who resided in Michigan, testified that she had heard her father, before the defendant came to Nebraska, say "that Chester was to have the land." She could not state the language used by her father, nor any other part of the conversation. She had never seen the land and did not know how much land her father or her brother had in Nebraska. She did not make it clear whether her father referred to some or all of his land in Nebraska, or to the timber claim which the defendant did have, or to the land in dispute. Another sister, Mrs. Gribben, who resides in Iowa, testified that she had heard her mother say that the defendant "has got no heirs and we will get the land anyway." They were talking about the defendant holding the land, and it does not appear that her mother's statement had anything to do with the defendant's right to the land. She also testified that she had heard her brother, C. C. Holloway, say that the land was the defendant's, and had heard the defendant say the same thing. C. C. Holloway was a witness upon the trial, and of course neither his statement not under oath, nor the statements of defendant himself, could be evidence in this case. Samuel King testified that he had heard defendant say that the land "belonged to his mother, and that it belonged to his father, and that it belonged to him," and, when asked what the defendant said about its belonging to him, he answered: "That is about all I ever heard him say; its belonging to them."

Defendant's exhibit 2 purports to be a long letter written by Ira Holloway in 1886. It is on coarse brown paper and written in pencil. It covers a variety of subjects, and contains a sentence which defendant claims should be read: "I rec'd a letter from Chester last week that he had

an offer of 4.00 per acre for 480 of his ranch in cash. I told him to do as he thot best. He may sell." The plaintiff insists that the paper is wholly incompetent; that it shows on its face that it has been changed in material parts. Some of the words and figures of the above quotation have been retraced, and there is some appearance of erasure and substitution. The trial court overruled the objection to the admission of the paper in evidence, and said that he would consider it "for what in his judgment he considered it worth." Such evidence is not very satisfactory, and even if it is considered genuine, and read as the defendant contends, it does not so strengthen defendant's evidence as to overcome the evidence of plaintiff and require a judgment in the defendant's favor. The defendant was then more than 40 years of age, and that he should obtain his father's consent to sell the land is significant. As a ranch it was used only by the son, and might for that reason be spoken of as "his ranch." In the clause "480 of his ranch," the figures and parts of words appear to have been re-written. The whole tract occupied by him was exactly 480 acres, so that the words "480 of" as they appear in this paper have no especial force, but with the words "his ranch" they have an awkward appearance. The paper is of very little value as evidence.

There is, perhaps, other evidence in the record that might be considered as indicating that the defendant is the owner of this land, but it is not of sufficient importance to make it advisable to extend this opinion by reciting it here.

The evidence produced by the plaintiff is amply sufficient to rebut the defendant's evidence, and to establish that Ira Holloway never agreed to transfer the legal title to the land to the defendant. It is not necessary to recite and review the great volume of evidence. We will call attention to a few items as illustrating its general character: One of the appraisers of the estate testified that when he and his associates were making an inventory of the property of Achsah Holloway, deceased, he called upon the de-

fendant and asked him for a statement of her property, and, among other things, he stated this land in dispute as the property of Achsah Holloway. This witness appears to be interested in the estate, and his testimony is denied by the defendant.

Under our present statute, we are required to try this case *de novo,* without reference to the decision of the trial court. When several witnesses who disagree as to an important fact have testified in the presence of the trial judge, and the court has had an opportunity to observe their manner and the many circumstances that tend to give confidence or arouse distrust as to the reliability of their testimony, this court will take into consideration the estimate of the trial court as to the reliability of the evidence.

On the evening after the funeral of Achsah Holloway, several of the heirs being present, and the defendant with them, some of the papers of the deceased were examined, and several of the persons present testified upon the trial that the defendant was asked to state the property of the deceased, within his knowledge, which he did, and among other things stated this land in dispute and the probable value thereof. This testimony is denied by the defendant, and by his two sisters, above named, who were also present. The evidence of some of these witnesses was taken by deposition, but some of them testified to this conversation in open court, and the trial judge appears to have believed their testimony.

During all of these years the taxes on this land have been paid, principally, if not entirely, by the parties who held the legal title, or by some one in their behalf. The defendant testified that for one or two years, 25 or 30 years ago, he paid the taxes. He took receipts in his father's name, but paid them, as he says, with his own money. There is other evidence in the record, some of it strongly tending to show that this land was regarded by all, including the defendant, as the land of Ira Holloway, during his lifetime, and after his death as the land of

Achsah Holloway, and there is also some evidence of the same nature, but of less force and importance. The evidence fails to show that Ira Holloway sold this land to the defendant, or agreed that the defendant should have the land as his own, or that the defendant has held the land adversely so as to acquire title by adverse possession. We are satisfied, however, that this evidence does prove that Ira Holloway put the defendant into possession of the land and allowed him to retain possession because of his indebtedness to the defendant, and because of the use which he had of the defendant's money; that both parties intended and expected that a settlement would be made between them, and the defendant held possession of the land under an implied agreement that he might do so until his money was returned to him. Under such circumstances, the statutes of limitation would not run either against Ira Holloway's right to the land nor the defendant's claim for the money which his father owed him. The defendant ought not now to be dispossessed of the land without a settlement and adjustment of the amount due him from the estate. The evidence is not sufficient to enable us to determine with certainty the amount due defendant.

The judgment is therefore reversed and the cause remanded, with instructions to take further evidence, if necessary, and find the amount due defendant with simple interest at 7 per cent. per annum. Against this, offset the value of the use of the land, and enter a decree in favor of plaintiff for possession of the land upon payment of balance due defendant as so found. Unless the same is paid within 90 days from the entry of the decree, the land shall be sold, and costs and defendant's claim paid out of the proceeds, and balance to the plaintiff.

REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.