NELLIE G. MILLER, APPELLEE, V. FERNAN H. RADTKE AND ESTELLA L. RADTKE, APPELLANTS.

432 N.W.2d 542

Filed December 9, 1988.   No. 87-152.

Guy G. Curtis, of Curtis & Curtis, for appellants.

Ronald D. Mousel, of Mousel Law Firm, P.C., for appellee.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and MORAN and BROWER, D. JJ.

GRANT, J.

On April 17, 1985, the plaintiff-appellee, Nellie G. Miller,

filed a "Petition in Ejectment" in the district court for Furnas County against the defendants-appellants, Fernan H. and Estella L. Radtke. The petition, among other things, prayed that the court find that plaintiff had "properly elected forfeiture of the contract and is entitled to keep previous payments of defendant as liquidated damages" and that defendants "be removed and Plaintiff placed in possession of said real estate (including . . . growing crops)." On May 20, 1985, through an attorney from Georgia, defendants filed a pleading entitled "Defendants' Answer and Defensive Pleadings." On June 9, 1986, the trial of the matter was held before the judge, sitting without a jury.

On September 21, 1986, in a journal entry judgment, the court found, "The pleadings of the case are made up by the ejectment peition [sic], a general denial and a reply in the nature of a general denial. No equitable defenses are before the Court." The district court rendered judgment for the plaintiff for possession of the property and ordered the deed and other documents held in escrow returned to plaintiff. The court denied defendants' motion for new trial, and defendants timely appealed to this court. In this appeal, defendants' assignments of error may be summarized as errors of the trial court (1) in finding there were no equitable defenses before the court, and (2) in granting possession of the property in question to plaintiff without considering defendants' large equity in the property. We reverse and dismiss.

The record shows the following. On January 2, 1965, the defendants entered into a land contract for the purchase of 840 acres of farm ground in Furnas County. The vendors, George and Nellie Miller, agreed to sell the property for $98,000. The contract provided for a $15,000 downpayment (made in 1965), with the remaining $83,000 payable in 25 equal annual installments with interest of 5 percent. If payment was not received within 60 days of the due date (December 15 of each year), the agreement provided that all payments made by the defendants would "be forfeited . . . and retained by the [Millers] as liquidated damages in full satisfaction of all the damages sustained," with the Millers having the "right to re-enter and take possession of" the property upon a breach by

the defendants. The contract also made time of the essence and contained an "adverse condition" clause giving the defendants the option of paying only the annual interest for any 2 consecutive years should they be unable to tender the entire payment. After entering into this agreement, a deed was placed in escrow, and the Millers moved to Norton, Kansas. In 1975, George Miller died. This action was begun by Nellie Miller, hereinafter referred to as plaintiff.

For the 18 years following the execution of the agreement, the defendants timely made their payments under the contract. In 1982, Fernan Radtke told plaintiff of the financial difficulties he was having. He requested that plaintiff deed over to the Radtkes 200 acres of the original 840-acre tract. Plaintiff testified that after she had executed the deed conveying the 200-acre parcel to Radtkes, Fernan Radtke promised to pay her $6,000. Radtke paid the $6,000. The trial court found that this payment was not intended by the parties as payment on the land contract, or as an annual installment, but implicitly found it was in consideration of plaintiff's aiding in the transaction by giving defendants a deed to the 200 acres in question. Defendants allege no error in this finding.

Following the execution of this deed, the defendants sold the 200 acres for $83,000. None of this money was applied to the balance due under the land contract. On December 3, 1982, defendants made their 1982 installment under the contract.

Apparently, defendants' financial troubles continued, although they were buying their farm under the most favorable terms. On October 5, 1983, defendants, without the knowledge of plaintiff, entered into a land contract with Leroy and Eloise Dixon to sell 320 of the remaining 640 acres. The Dixons agreed to purchase the property for $128,000 and made a $20,000 downpayment. An additional $10,000 was to be paid on March 1, 1984, and the balance paid over 15 years. The Dixons made no payments other than the $20,000 downpayment. Fernan Radtke testified that the $20,000 received from this transaction was used to meet other obligations and was not used to reduce the balance owed under the Radtke-Miller land contract. Defendants timely made their 1983 installment on the Radtke-Miller contract.

Defendants failed to make the payment due December 15, 1984. At that time, the unpaid balance on the Radtke-Miller contract was $34,076.11, and seven more payments were owing. On April 17, 1985, plaintiff filed her petition in ejectment.

At the trial, Fernan Radtke testified that the 320 acres remaining after the Radtke-Dixon transaction had a value of $200,000. No other testimony as to value of that property was adduced. During defendants' tenure they expended $28,100 in improving the main dwelling house and roads to that house. The house was located on the 320 acres retained by defendants. The defendants installed four water wells (two on the retained land), leveled the farm ground, installed an irrigation system, remodeled the second house, installed fencing, and completely restored the barn. Testimony does not show the value of these improvements, but it is clear that substantial improvements were made to the 320 acres retained by the defendants, as well as to the 320 acres which were the subject of the Radtke-Dixon transaction.

Plaintiff attached to her petition in ejectment a copy of the land contract and an amortization schedule showing that the defendants had timely paid 18 of the 25 annual installments. The schedule also showed that after the 18th payment, defendants had paid to plaintiff $48,923.89 on the principal and $57,079.19 as interest and that $34,076.11 was the balance owing under the contract.

A party may at any time invoke the language of his opponent's pleadings on an issue being tried as rendering certain facts indisputable. *Stahlhut v. County of Saline*, 176 Neb. 189, 125 N.W.2d 520 (1964). See, also, *Cook v. Beermann*, 202 Neb. 447, 276 N.W.2d 84 (1978), where we held that matters contained in pleadings are judicial admissions insofar as the adversary is concerned. The fact that the defendants had made a substantial number of payments under the contract was therefore before the district court as part of plaintiff's petition.

Moreover, the defendants' equity in the property was before the district court, if evidence was adduced on the question, because of defendants' answer in their pleadings. The answer

admitted or denied, by paragraph number, the allegations of the petition. Paragraph 10 of plaintiff's petition alleged that, "therefore, Plaintiff has a legal estate in the above-described real estate; that Plaintiff is entitled to possession of such real estate; and, that Defendant is unlawfully keeping Plaintiff from possession of such real estate." Defendants' answer stated, as to that allegation, "The defendants deny the allegations contained in paragraph 10 of the petition." Based on these pleadings the district court held that there were no equitable defenses before it. We do not agree.

While defendants did not plead any affirmative defenses, defendants' general denials in an ejectment action are sufficient to raise the question of the defendants' equity in the property as a defense to the ejectment action. We stated in *Dale v. Hunneman*, 12 Neb. 221, 224, 10 N.W. 711, 712 (1881), "If the defendant possesses an equity which negatives the plaintiff's right of possession, such equity may be proved under a general denial, as it is a mere defense to the action." Plaintiff's reliance, in her brief, on Neb. Rev. Stat. § 25-811 (Reissue 1985), which sets out generally what an answer shall contain, is misplaced. A defendant's answer to a petition in ejectment is not governed by § 25-811, but by Neb. Rev. Stat. § 25-2125 (Reissue 1985). This section provides in pertinent part:

It shall be sufficient in [an ejectment] action if the defendant in his answer denies generally the title alleged in the petition, or that he withholds possession, as the case may be; but if he denies the title of the plaintiff, possession by the defendant shall be taken as admitted.

It is at least of historical interest to note that this statute is substantively identical with the statute originally enacted as Rev. Stat. § 627 (1866). The pleading differences in ejectment cases have long been noted by this court. In *Fitch v. Walsh*, 94 Neb. 32, 33, 142 N.W. 293, 294 (1913), we quoted from *Franklin v. Kelley*, 2 Neb. 79 (1873):

"It is undoubtedly true that the theory of the system of pleading under the code generally is that the facts necessary to constitute a cause of action or defense shall be stated. But, in respect of actions for the recovery of real property, another rule has been adopted. Why this is so is

not very clear. . . ."
See, also, *Staley v. Housel*, 35 Neb. 160, 52 N.W. 888 (1892); *Pinkham v. Pinkham*, 61 Neb. 336, 85 N.W. 285 (1901). While an action for ejectment may be defeated on equitable grounds, *White v. Whitney*, 68 Neb. 739, 94 N.W. 1012 (1903), for a defendant to prevail, his equitable title must be superior to that of the plaintiff's, *Blazier v. Johnson*, 11 Neb. 404, 9 N.W. 543 (1881). In this case, by making a general denial to plaintiff's petition, the defendants admitted possession, but generally deny plaintiff's title or right to possession. The issues in the trial are thus made up. The issue as to defendants' equity in the land was before the court and should have been considered by the court in the trial of the ejectment issue.

The next problem is to determine how the case should be tried and reviewed in this court. The case presents a petition in law seeking ejectment and an answer which raises an equitable defense. The general rule in such cases was set out in *White v. Medico Life Ins. Co.*, 212 Neb. 901, 902-03, 327 N.W.2d 606, 608 (1982), as follows: "Although a defendant may present any defense, legal or equitable [citations omitted], interposing an equitable defense does not convert an action otherwise at law into one in equity." We adhere to this general rule, but note that actions in ejectment constitute an exception to that rule. In an ejectment action, where defendant presents an equitable defense, the case is tried, and reviewed, as an action in equity. We stated in *Tillson v. Holloway*, 94 Neb. 635, 143 N.W. 939 (1913):

> When in an action of ejectment the defendant alleges an equitable title to the land and right of possession thereunder, and all other defenses have been eliminated, the trial of the issue so presented is essentially the trial of an action in equity, and, upon appeal, this court will try the issue *de novo*, "without reference to the conclusion reached in the district court."

(Syllabus of the court.) We have not changed that rule in the ensuing years. Our review is therefore de novo on the record. *Southern Lumber & Coal v. M. P. Olson Real Est.*, 229 Neb. 249, 426 N.W.2d 504 (1988).

The methods of enforcing land contracts were summarized

in T. Dysart, Foreclosures in Nebraska § 186 (1929), where the remedies of a vendor in a land contract were classified, in order of increasing severity toward the vendee in such a contract, as (1) foreclosure, where the land is sold as in other foreclosures, and the vendor is reimbursed out of the proceeds; (2) strict foreclosure, where the vendee is required to pay the balance due within a specified time or be disbarred of all interest in the land; and (3) ejectment, where the vendee is eliminated from the title, and the vendor acquires title and possession without giving the vendee an opportunity to redeem and without returning payments already made to the vendor. It is readily apparent that in enforcing a vendor's rights in a land contract, ejectment is a more severe disposition than is the remedy of strict foreclosure.

This court has consistently held that a land contract may be strictly foreclosed, but only in certain factual situations where the procedure would be equitable.

We stated in *Riffey v. Schulke*, 193 Neb. 317, 319, 227 N.W.2d 4, 6 (1975), as follows:

A contract for the purchase of real estate may be strictly foreclosed where it is clear that the property is of less value than the contract price and that it would not bring a surplus over and above the amount due if a sale were ordered, and such procedure would not offend against justice and equity.

See, also, *Ryan v. Kolterman*, 215 Neb. 355, 338 N.W.2d 747 (1983); *Ruhl v. Johnson*, 154 Neb. 810, 49 N.W.2d 687 (1951).

Plaintiff, in her brief at 4, is honorably forthright in conceding that, "as a general rule, equity abhors forfeitures" and, at 5, that "it is true that the remedy by strict foreclosure is a harsh one and that, normally, the courts will decree a strict foreclosure of land contracts only under peculiar and special circumstances." In this case, ejectment of a vendee may be granted as a remedy for violating the terms of a land contract only where the equities of the particular case justify such a disposition, where the property is of less value than the contract price, and where such a procedure would not offend against justice and equity.

In this case, the remedy of ejectment offends against justice and equity. As stated above, defendants made payments on the

contract for 18 years and substantially improved the property. The evidence was uncontroverted at the trial that the land had a value far in excess of the amount owing on the contract. It may be true that defendants acted inequitably in not paying the land contract, in full or in substantial part, at times when sales of portions of the land itself generated substantial sums in 1982 and 1983. The balancing of the equities, however, on this de novo review, can only lead to the conclusion that ejectment is much too harsh a remedy for plaintiff in this case. Plaintiff must be left to other remedies. The judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.