MINNIE LANHAM, APPELLEE, v. CHARLES J. BOWLBY ET AL., APPELLANTS.

FILED FEBRUARY 26, 1910.  No. 15,863.

1. **Appeal: STIPULATION.** Where a petition is filed in the district court by which plaintiff in possession seeks a decree quieting title to real estate, and defendant answers denying the right of plaintiff to such possession and demanding judgment in his favor therefor, and decree is entered denying relief to either party, from which the defendant alone appeals, but pending the appeal the parties stipulate that "the court shall consider all questions for and against either party as though both parties had taken an appeal and enter decree accordingly", this court will treat the whole case as before it the same "as though both parties had taken an appeal."

2. **Adverse Possession: ACTS CONSTITUTING.** Where the purchaser of

real estate under a verbal contract of sale is put in possession by the vendor under an oral agreement for the payment of the purchase price thereafter, the possession of the vendee will not become adverse until payment in full of the agreed consideration. But in such a case where a dispute arises between the parties as to whether or not such consideration has been paid in full, and the vendee in person or by his agent or attorney notifies the vendor that he claims full payment of such consideration has been made, and demands of the vendor a deed for said real estate, such acts will constitute such an assertion of ownership by the vendee that his possession thereafter will be adverse; and, if such possession is permitted to continue for the full statutory period of ten years thereafter, it will vest in the vendee an absolute title to such real estate.

3. ———: Evidence. And in a suit thereafter by the vendee to quiet his title, where the testimony of the vendor and vendee is conflicting, but it appears from the evidence that the vendor never at any time after such assertion of ownership and demand for a deed by the vendee made any demand upon the vendee for payment of any balance claimed to be due, nor in any manner questioned the title or right of possession of vendee, and it further appears from the evidence that the vendee and his heirs have during all of said time been in possession of and exercised absolute dominion over said real estate, such facts and circumstances will be held to furnish sufficient corroboration of the testimony of vendee to entitle him to a decree quieting his title to such land.

Appeal from the district court for Saline county: Leslie G. Hurd, Judge. *Reversed with directions.*

*W. G. Hastings* and *M. H. Fleming,* for appellants.

*Thomas H. Matters, contra.*

Fawcett, J.

This is the second time this case has been before us. For our former opinion, see 79 Neb. 39. At that hearing a judgment in favor of plaintiff was reversed on the ground that it was not sustained by sufficient evidence. On the second hearing plaintiff and defendants each asked affirmative relief. The court denied relief to either party, and dismissed both the petition and cross-petition. Defendants appealed, and plaintiff presents a cross-appeal.

After the filing of the appeal by defendants, a stipulation was filed signed by the attorneys for each party, as follows: "It is hereby stipulated by and between all parties hereto that either party to this suit has the right to use the bill of exceptions and transcript upon the questions presented in the record, and the court shall consider all questions for or against either party as though both parties had taken an appeal and enter decree accordingly." It is contended by defendants that plaintiff has taken no appeal, and that the only thing to be considered is their own appeal from the judgment of the district court dismissing their cross-petition, while plaintiff insists that the stipulation above set out gives the court full jurisdiction to examine into and decide the whole case "for or against either party as though both parties had taken an appeal", and that this court shall "enter decree accordingly." Upon full consultation we are all agreed that under the provision of section 675 of the code, which provides that "the filing of such transcript shall confer jurisdiction in such case upon the supreme court", jurisdiction was obtained, and the case being in equity, and the parties entitled to a trial *de novo,* the stipulation must be held to require the whole case to be examined the same as though plaintiff had prosecuted a separate and distinct cross-appeal. The writer being so instructed, that course will be followed, notwithstanding any irregularity in the proceedings.

The petition alleges substantially: That in January, 1880, defendant Charles J. Bowlby, being the owner in fee simple of the southeast quarter of the northeast quarter of section 33, township 8, range 4 east of the Sixth principal meridian, in Saline county, Nebraska, sold the same by verbal contract to John Lanham for the sum of $1,100, payable as follows: "Said sum of $1,100 to be credited upon the books of John Lanham and paid for in building material, rent, and other materials to be furnished for the said Charles J. Bowlby by the said John Lanham, and the said Charles J. Bowlby agreed to con-

vey said premises to John Lanham by deed of general warranty upon the payment of the purchase price as aforesaid"; that defendant Bowlby thereupon delivered possession of said premises to said John Lanham under said contract, and that said John Lanham "continued in open, notorious, visible, continuous, exclusive, adverse and actual possession of the same from that time until his death"; that said Lanham performed said contract on his part by crediting the purchase price as agreed, and by furnishing rent and materials as agreed in the sum of $1,313.61; that said John Lanham duly performed all the conditions of said contract, and, when said performance upon his part was completed, he requested the defendant Bowlby to convey said premises according to the terms of said contract, but defendant refused and continues to refuse to execute and deliver said conveyance; that on or about March 3, 1900, the said John Lanham died, leaving plaintiff and certain other heirs at law; that all claims against the estate of John Lanham were fully paid and his estate finally settled; that all of the other heirs at law have since the settlement of said estate conveyed their interest in said lands and premises to plaintiff; that at the time of the purchase of said property by John Lanham defendant Mary Bowlby claimed to have a contingent right of dower in said premises by reason of her marriage to defendant Charles J. Bowlby, for which reason she is made a party defendant; that plaintiff has often requested said Charles J. Bowlby to convey said premises to her, but that said defendants Bowlby have each failed and refused and still refuse to execute and deliver to plaintiff a deed to said premises; that plaintiff is now in the actual possession of said premises, and has been in the open, notorious, visible, continuous, exclusive, adverse and actual possession thereof since the death of the said John Lanham; that defendant Charles J. Bowlby claims to have some title adverse to plaintiff's title to said described premises by virtue of a certain deed now on record in said Saline county, but that said Bowlby

has no right, title or interest in said premises; that said
deed was so recorded in the office of the clerk of said
Saline county; that said deed is valid on its face, and
constitutes a cloud upon the title of plaintiff and injures
the market value thereof; that defendant Charles J.
Bowlby will not institute an action at law to determine
the legal title to said premises, and that plaintiff is with-
out remedy at law. The prayer of the petition is for a
decree; that her title be quieted; that defendants be de-
creed to execute and deliver to plaintiff a good and suffi-
cient deed, and, failing so to do, that the decree of the
court be entered canceling all of the right, title and in-
terest of said defendants; that the cloud caused by the
said record of said deed be removed, and that same be
declared to be no cloud upon the title of plaintiff, and
that defendants be perpetually enjoined from instituting
any suit at law or in equity against plaintiff for posses-
sion of the premises, or from setting up any claim or
claiming any estate therein adverse to plaintiff, and for
such other and further relief in the premises as equity
and good conscience may require.

The answer alleges substantially as follows: Admits
the relation of defendants as husband and wife and the
relationship of the other parties as alleged by plaintiff;
admits the death of John Lanham, and that the records
show the title to the lands in controversy, to wit, the
southeast quarter of the northeast quarter of section 33,
township 8, range 4 east, in Saline county, Nebraska, in
the defendant Charles J. Bowlby; denies generally all the
allegations of the petition not expressly admitted; spe-
cifically denies that the said John Lanham or either of his
heirs or successors or the plaintiff ever had possession of
said real estate adverse to defendants; avers that said
John Lanham in his lifetime "as tenant at sufferance of
the said Charles J. Bowlby" went upon the land and re-
moved ice therefrom "under the expectation that he would
buy said real estate of the said Charles J. Bowlby; that
he never bought it; that, on the contrary, he entirely

failed to do so"; that from the time he so went on to said real estate to cut ice until the time of his death, about the year 1900, he recognized and admitted that the said Charles J. Bowlby was the owner of said land, "and that he was there doing whatever he did there and, among other things, wrongfully removed timber therefrom under the said Charles J. Bowlby as the owner thereof, and not otherwise"; that plaintiff is now in possession of said premises wrongfully and without any right of title or right of possession; that defendant Charles J. Bowlby is, and for over 29 years has been, the owner of said real estate in fee simple, and is entitled to the possession thereof; "wherefore defendants pray judgment that plaintiff have no cause of action; that the defendant Charles J. Bowlby is the owner of said real estate, and entitled to the possession thereof, and that the title thereto be quieted in him, and the possession thereof be restored to him, and that defendants recover their costs, and for such other and further relief as equity and good conscience may require."

For reply, after admitting the allegations in the first paragraph of defendants' answer, and denying generally all other allegations in the answer except such as are admitted by the reply, plaintiff alleges substantially that John Lanham during his lifetime went onto and removed ice from the lands, and removed timber therefrom during his lifetime; that in the year 1880 or thereabout the said John Lanham purchased from defendant Charles J. Bowlby the land in controversy at an agreed price of $1,100, which amount was to be credited on the books of John Lanham and paid for in rent, building and other material furnished to and for the said Charles J. Bowlby by the said John Lanham. (setting out the same statement referred to in the petition); that during the year 1888 plaintiff had under the terms of the said contract completely paid the purchase price of said premises, and was entitled to a conveyance thereof; that at the time of the completion of the payment of the purchase price in

the year 1888 the said John Lanham was in actual possession of said premises under and by virtue of said contract of purchase; that from and after the said year of 1888 the said possession of the said John Lanham commenced and continued to be absolute, open, notorious, adverse, continuous, exclusive and actual, he claiming title thereto as the absolute owner thereof, and that such ownership and possession continued from said date until the present time in the said John Lanham, his heirs, and this plaintiff, and that plaintiff is now so in possession. ·

By reason of the death of John Lanham, the evidence in this case is not of as satisfactory a character as we could wish, but there having been two trials of the case in the district court, at which each side was represented by able and experienced counsel, there is every probability that all the evidence was produced upon the last trial which can ever be furnished by either party. Indeed, this condition was admitted to exist by counsel in their oral arguments at the bar. To allow the decree of the district court therefore to stand would be to leave the parties suspended in mid-air, as it were, and permit the title and the true ownersip of the land in controversy to remain in an unsettled condition for all time. This should not be done unless the evidence is so entirely unsatisfactory that no reasonably just conclusion as to the rights of the parties can be drawn therefrom. We agree with the statement made by Mr. Commissioner Epperson at the former hearing that the evidence clearly establishes that plaintiff's ancestor took possession of the property in controversy under a verbal agreement with the defendant, and that he and his heirs have been in continuous occupancy thereof from 1880 until the present. We think the evidence also fully establishes the fact that that "verbal agreement" was a verbal sale of the lands in controversy by defendant Bowlby to plaintiff's ancestor, and that under such verbal sale the said John Lanham, with the full permission of defendant Bowlby, entered upon such possession. From that time until the time of the trial John

Lanham and plaintiff have at all times had the posses-
sion and exercised absolute dominion over the lands in-
volved. Mr. Lanham built an icehouse, induced the rail-
road company to build a track to it, constructed a bridge
of some kind, rented a portion of the lands to one Boeckel,
who built a slaughterhouse thereon, and, what is still
more significant, cut large quantities of timber growing
upon the lands and converted it into cordwood. Plaintiff
testifies that her father cut timber almost every winter,
that he employed at times probably as high as 20 men
cutting wood, and at times probably as high as 50 or 100
men cutting ice. Defendant Bowlby himself testified that
at one time in passing by the land in the cars he "noticed
a lot of wood ricked up there, four feet wide. Q. How
much did you see there? A. I could only give an esti-
mate, but there might have been 50 cord and might have
been 100, I never was there to measure it. It was long
ricks of it. Q. How many ricks did you see?. A. Well,
I never measured them, so I don't know, but I should say
from 50 to 100 ricks or cords. Q. How much is that wood
worth? A. I suppose about $4 a cord, from $4 to $5 a
cord. Q. That was in about '95 you think? A. Well,
along there. It might have been earlier and might have
been later, but I think it is probably earlier. It has been
a good while ago." Notwithstanding the fact that Mr.
Bowlby saw that Mr. Lanham had cut and piled up from
$250 to $500 worth of cordwood, he never, so far as the
record discloses, made any demand for any portion of
the wood, or of the money derived from the sale thereof,
nor did he ever complain to Mr. Lanham that he had no
right to cut the wood upon the land. In fact, the record
is entirely barren of proof that defendant Bowlby ever
in any manner during all those years questioned Mr. Lan-
ham's right to the absolute dominion over and control of
the lands in controversy. We think this evidence com-
pletely destroys defendants' contention that Mr. Lanham
was simply "a tenant at sufferance", and entirely over-
comes his plea that he never had sold the land to Lanham.

It also furnishes strong corroboration of plaintiff's contention that the land had been fully paid for by her father during his lifetime, for it seems incredible that defendants would permit Mr. Lanham to convert valuable timber into cordwood and retain the full proceeds thereof, if Lanham was at that time indebted to him for any part of the purchase price of the land. We adhere to our former holding that "one who enters into the occupancy of real estate under contract cannot afterwards obtain title thereto by adverse possession, without showing that his occupancy had assumed an adverse character and continued as such during the statutory period." It was by reason of the fact that the evidence at that time was not sufficient to show that the possession obtained by Mr. Lanham, as above set out, had assumed an adverse character, and thereafter continued for the statutory period, that we reversed the judgment of the district court on the former hearing. At the last trial plaintiff introduced as a witness her brother-in-law, Guy L. Abbott, Esq. Mr. Abbott testified that after his marriage to the daughter of John Lanham he assisted Mr. Lanham a good deal in the management of his business until 1892, when he left Nebraska and removed to Sheridan, Illinois. Mr. Abbott was at the time, and still is, a practicing attorney. He testifies that, while so acting for John Lanham in 1888 or 1889, he called upon defendant Bowlby at defendant's office which was then in a building in Crete owned by Mr. Lanham; that he then told Mr. Bowlby "that the land was paid for and we were entitled to the deed, * * * and told him it was all paid for. * * * Of course I can't remember the exact conversation or anything of that kind, but that was the purport of it, that the payments had all been made and I wanted the deed to the land for him. Q. For Lanham? A. For Lanham." On cross-examination he was asked: "Q. Didn't you in that conversation present some kind of an accounting, something like $300 you claimed Lanham had against Bowlby, and you wanted Bowlby to let that go on the purchase price?

A. That was a part of the conversation; yes. Q. Didn't you tell him that the balance you would pay or see paid? A. I probably said to him that if there was any balance that we would pay it, but I didn't consider that there was any balance. Q. Didn't you admit there that that would be all the payment, that account, and the balance would have to be paid in some other way? A. No, sir, neither in words nor effect did I admit that that was all of it. Q. Instead of demanding a deed to Lanham, didn't you ask for a deed to your wife in that conversation? A. No, sir; I asked for the deed to Lanham. Q. Didn't you tell him that Lanham was involved, and you would rather have the deed to your wife in that conversation? A. No, sir. Q. Didn't you tell him something to that effect? A. No; I told him in effect that I wanted the deed to Lanham because the land had been paid for and he wanted a deed." All of this answer after the word "No" was stricken out on motion of defendant.

Mr. Bowlby in his own behalf testified that about 1889 or 1890 Mr. Abbott came to his office with a bill for brick: "My remembrance is it was about $300. He stated that he wanted to make some arrangements for the land, and he asked if I would make a deed to himself or his wife. I think his wife. My remembrance is it was his wife; and they would fix the balance in some way, he didn't say how, but just they would fix the balance. Q. The balance of what? A. Due on the land. Q. Balance over what? A. Over the bill that was presented to me at that time. Q. Wanted you to allow that bill, then, did he? A. Yes; I suppose so, that was the inference, and I declined to do so. Q. Did he state anything about how much the balance was? A. No, sir; didn't say anything about it, never talked on that subject. I asked for the balance, the amount, the bill was before me, and I thought I had kept it, but I never have been able to find it. It was a bill for bricks I had obtained from them, I presume in 1886, '87, or maybe 1889, at different times. Q. State if he gave any reason why he wanted the deed made

in his wife's name or his name? A. No; he didn't say to me at that time why it was that he wanted it. Q. What did you say? A. The reason I wouldn't do it? Q. (540) Yes; what did you tell him? A. I told him if Mr. Lanham had any interest in that land that I didn't feel like it was safe for me to make a deed to other parties, that at that time Mr. Lanham was involved and had creditors and judgments against him, and all that, and that I wouldn't make a deed to anybody else for the land at that time. I didn't think I was safe in doing it." He then denies that Abbott said anything about its being paid for. "He never said to me it was paid for. Q. Now, had the land been paid for, or any part of it? A. It had not according to the agreement or by the agreement."

This testimony by Mr. Bowlby is quite significant. His answer to question 540 shows that he had in mind the fact that a deed should be made to somebody, but the reason which he says he gave Mr. Abbott for not making the deed to Abbott's wife was that he did not feel it would be safe to make a deed to her for the reason "that at that time Mr. Lanham was involved and had creditors and judgments against him", and that he did not think he would be safe in making a deed to anybody else. There is not a particle of testimony in the record to show that what he claims he then said about Mr. Lanham was true, viz., that Mr. Lanham "was involved and had creditors and judgments against him." On the contrary, the record shows that Mr. Lanham at the time of his death, which, according to Mr. Bowlby's testimony, occurred only a year later, was entirely solvent, his estate, outside of the land in controversy, paying all of his obligations. Then, again, it will be observed he does not give a direct answer to the question "Now, had the land been paid for, or any part of it?" His answer is: "It had not according to the agreement or by the agreement." He does not say that it had not been paid for in other ways. He does not attempt to testify that, after Mr. Abbott was there asking for a deed, he ever went to Mr. Lanham prior to his death,

or to the plaintiff thereafter, and demanded any payments, or that they deliver up possession of the land, or asserted any right, title or claim of any kind to the lands in controversy, notwithstanding the fact that during all that time he lived within three-quarters of a mile of the land in controversy. According to Mr. Abbott's testimony, this demand for the deed was made in 1888 or 1889. According to Mr. Bowlby, Mr. Abbott's visit was in 1889 or 1890. Giving defendant the benefit of the later date—1890—and it still appears that from that time until this suit was commenced, a period of more than ten years, he permitted Mr. Lanham and plaintiff to continue in the undisputed possession and control of the lands in controversy without a word of objection. Moreover—a very significant fact—he never filed any claim against the solvent estate of John Lanham for any balance due him. These facts and circumstances furnish strong, and indeed almost irresistible, corroboration of the claim of plaintiff that the land had been fully paid for, and of the testimony of Mr. Abbott that that claim was asserted and deed demanded at the time testified to by him. We think, therefore, that the evidence is now sufficient to establish plaintiff's claim that the statute of limitations began to run against the defendants in 1889 or 1890, and that it had run for more than the statutory period of ten years at the commencement of this suit. No demand for any moneys due or for the possession of the land having been made by defendants for more than ten years prior to the suit, and subsequent to assertion of payment and demand for a deed by John Lanham, plaintiff became invested with an absolute title to the land in controversy. Not only that, but, if defendant Bowlby were now to bring suit for any balance which may have been due in 1889, he could, so far as the record before us shows, be successfully met with a plea of the statute of limitations. We do not think the evidence sustains any of the contentions made by defendant in his cross-petition, but that it is sufficient to sustain the allegations in plaintiff's petition,

The judgment of the district court is therefore reversed and the case remanded to that court, with directions to enter a decree quieting plaintiff's title in and to the lands in controversy.

REVERSED.