HENRY GRAMANN v. ULYSSES S. BEATTY, APPELLEE: RUDOLPH D. MAULIS, APPELLANT.

279 N. W. 204

FILED APRIL 21, 1938.   No. 30307.

*Hubka & Hubka,* for appellant.

*S. D. Killen* and *Jack & Vette, contra.*

Heard before Goss, C. J., Rose, Eberly, Day, Paine and Carter, JJ.

Carter, J.

This suit was commenced to obtain a foreclosure of a tax-sale certificate on a part of two lots in the village of Adams. The contest from which an appeal was taken arose over the question of the ownership of the property. The appellant, Rudolph D. Maulis, contends that he is the owner of an undivided one-half interest in the property, while the appellee, Ulysses S. Beatty, claims to be the owner of the whole tract. The judgment of the trial court was to the effect that Beatty was the sole owner of the whole tract, and Maulis appeals therefrom.

The record discloses that in 1916 Beatty and Maulis purchased the property and obtained and recorded a warranty deed thereto. For three years they jointly operated a garage on the property. In 1919 Maulis engaged in the garage and oil business in Sterling, and subsequently at Crab Orchard. Beatty remained in Adams and continued to operate the business at that point.

On September 30, 1919, Maulis and Beatty entered into a contract whereby Maulis agreed to sell his interest in the lots in question, together with the garage building, stock and fixtures, for $2,200, $100 of which was to be paid

in cash and the balance to be taken in stock and merchandise at invoice price not later than November 20, 1919. This contract was not acknowledged and was not filed for record until December 4, 1935.

It is the contention of Beatty that Maulis, over a long period of time, received stock and merchandise from his garage in an amount approximating $3,800, and that, in a settlement of accounts had on June 30, 1930, the $2,100 due on the contract was credited and that he has been entitled to a deed from Maulis since that date. Maulis contends that the contract was never intended as a sale of his interest in the property and that the contract was made to enable Beatty to hold his agency contract with the Ford Motor Company which was threatening to cancel it because Maulis, a partner, was selling a different make of automobiles at Sterling. The evidence further shows that for almost 10 years prior to June 30, 1930, Maulis was selling gasoline to Beatty in wholesale quantities. Maulis contends that, in their settlement of accounts on June 30, 1930, it was found that Beatty was indebted to him in the sum of $145, exclusive of the sum of $2,100 alleged to have been due under the contract. It is not disputed that Beatty gave Maulis a note for $145 on that date. The documentary evidence in the record does not disclose the amount of gasoline delivered by Maulis or the items taken into consideration by the parties in arriving at their settlement. The oral testimony on the subject is in irreconcilable conflict.

The evidence further shows, however, that on May 23, 1932, almost two years after the settlement of accounts, Beatty wrote Maulis a letter which in part is as follows: "I have been expecting to get a contract from you in accordance with our agreement when you were here. But Mr. Gramann informed me that he had written you and received a reply indicating you would not do this but would take $2,100. I do not think it will do me any good to try to sell and settle with you at this figure under present conditions, but would like to have a chance to try it according to

your agreement when you were here. Mr. Gramann said you mentioned settling in court and if you wanted to do this it would be useless for me to try to get a settlement with you otherwise, but thought you might be kidding him and I would like to try it anyway."

The letter from Gramann, Beatty's banker, under date of May 16, 1932, referred to in the letter of Beatty to Maulis, contains the following: "We are sorry that you did not come back to fix up some kind of a deal with Less (Beatty) whereby you enable him to go ahead and sell the garage. It is a great help and necessary that Less knows from you beforehand how much you will take for your half interest before he goes ahead and tries to make a deal for the garage. We would have liked it and believe that it would be the easiest if you would place in escrow with us a deed to Less for your half interest at $1,500 as you suggested with the instruction to use the same only against payment of this amount."

It also appears that on March 7, 1935, Beatty and wife gave a mortgage on the property to the Adams State Bank. It is worthy of notice that it covered only an undivided one-half interest in the lots.

Subsequently, on March 23, 1936, an opportunity to rent the premises in question to the Nebraska United Co-operative Oil Supply Company was presented to Beatty and Maulis. The result was that each, with full knowledge of the other, executed a lease upon the premises. The lease signed by Maulis stipulated that $20 of each monthly rental was to be sent direct to Maulis.

Upon a consideration of this evidence, we necessarily conclude that the contentions of Maulis are established by a preponderance of the evidence. If all accounts were settled on June 30, 1930, as contended by Beatty, there would have been no reason for a new agreement or a new settlement with Maulis. The admissions of Beatty in his letter to Maulis corroborate the testimony of Maulis that the contract price of the property had not been paid. The subsequent conduct of the parties in leasing the premises

supports the same conclusion. It is not shown anywhere in the record that Beatty demanded a deed or even contended that he had paid for the lots prior to the filing of the suit at bar. We conclude that the evidence preponderates in favor of Maulis on the question whether Beatty fulfilled the terms of the contract of sale and paid for the Maulis interest in the lots.

Beatty contends, however, that he has been in the exclusive and adverse possession of the lots for more than 10 years and that he has obtained a prescriptive right thereto. The contract of September 30, 1919, for the sale of the interest of Maulis in the lots provided that a warranty deed would be furnished upon the payment of the amount due thereunder. The amount was not paid. Maulis therefore still owned the fee simple title to an undivided one-half interest. There is no evidence in the record that Beatty claimed any interest adverse to Maulis until this suit was commenced. There is no evidence that Beatty in any way notified Maulis that he claimed title to the whole of the property. The following are the rules of law applicable to such situation.

"It is a well settled general rule that where one enters into and holds possession of land under an executory contract of purchase or bond for title, his entry and possession are in subordination to, and not adverse to, the rights of the vendor or of those holding under him. In such case a privity exists which precludes the idea of a hostile tortious possession pending the completion of the contract which can silently ripen into title by adverse possession under the statute of limitations. * * * The vendee is equitably estopped from claiming that the possession is adverse. * * * Where the entry is under such circumstances, the possession retains its subordinate character until payment or performance of all conditions by the vendee or until he surrenders the possession which he has had under the agreement or until he has distinctly and unequivocally repudiated the title of his vendor and such repudiation has been brought either expressly or by legal implication to the vendor's

knowledge, or until execution of a conveyance by the vendor to the vendee terminating the executory character of their relationship." 2 C. J. S. 672.

"Where the purchaser of real estate under a verbal contract of sale is put in possession by the vendor under an oral agreement for the payment of the purchase price thereafter, the possession of the vendee will not become adverse until payment in full of the agreed consideration. But in such a case where a dispute arises between the parties as to whether or not such consideration has been paid in full, and the vendee in person or by his agent or attorney notifies the vendor that he claims full payment of such consideration has been made, and demands of the vendor a deed for said real estate, such acts will constitute such an assertion of ownership by the vendee that his possession thereafter will be adverse; and, if such possession is permitted to continue for the full statutory period of ten years thereafter, it will vest in the vendee an absolute title to such real estate." *Lanham v. Bowlby,* 86 Neb. 148, 125 N. W. 149.

"The possession of land under an executory contract of purchase is not adverse to the vendor until the purchase price is paid, or until the vendee is entitled to a deed of conveyance from his vendor under the terms of the contract." *Beer v. Dalton,* 3 Neb. (Unof.) 694, 92 N. W. 593.

"The statute of limitations will begin to run in favor of a cotenant in possession claiming title in himself to the entire estate as against the other cotenants, as soon as knowledge of the fact that he is in possession asserting that he owns the entire estate, hostile and adverse to any claim of right in them, is clearly brought home to them." *Keleher v. Kelly,* 89 Neb. 127, 130 N. W. 1032.

"Possession by one cotenant of common property is presumed to be friendly as regards his cotenants; and before such possession can become adverse, notice that the tenant in possession is claiming the entire estate in hostility to his cotenants must be brought home to the latter in some plain and unequivocal manner. * * * Ex-

clusive possession by a cotenant, receipt of the rents and profits, payment of taxes and making ordinary improvements proper for the full enjoyment or use of the estate, however notorious and long continued, are not, of themselves, acts of such character as to give notice to his cotenants of a hostile claim. * * * The possession by a cotenant being presumed to be friendly, his cotenants are not chargeable with laches for failure to demand their share of the possession and profits, where they have no notice of a hostile claim by the tenant in possession." *Walter v. Walter,* 117 Neb. 671, 222 N. W. 49.

Under these holdings, we are constrained to the view that the possession of Beatty in the case at bar was not adverse, under the facts set out in this opinion, and that no right of prescription could be grounded upon his occupancy of the property.

We think the trial court erred in decreeing that Beatty was the sole owner of the property in suit. The judgment of the district court is reversed, with directions to enter judgment decreeing that the appellant is the owner of an undivided one-half interest in the lots described in the petition.

REVERSED.