LEO EGAN LAND COMPANY, INC., APPELLEE, V.
ELIZABETH A. HEELAN, APPELLANT, AND
CONNIE ELAINE EGAN ET AL., APPELLEES.

313 N.W.2d 682

Filed December 28, 1981. No. 43640.

Michael V. Smith of Smith, King & Waite for appellant.

Tye, Worloc, Tye, Taylor & Hopkins for appellee Leo Egan Land Co.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

KRIVOSHA, C.J.

Appellant, Elizabeth A. Heelan (Heelan), appeals from a judgment entered by the District Court for Sheridan County, Nebraska, finding that the appellee, Leo Egan Land Company, Inc. (Egan), had acquired title to certain land involved in this action by adverse possession. We believe that the record in this case requires that the action of the trial court be reversed.

The record discloses that in 1934 and 1935 Elizabeth A. Egan acquired title by purchase to certain land in Sheridan County, Nebraska, described as the south half of Section 2, all of Section 10, and the north half of Section 11, all in Township 25 North, Range 41 West of the 6th P.M. She died intestate a widow on August 15, 1950, leaving surviving five children, one of whom was the appellant Heelan. The other children were Mary Rock, Kathryn Bunner, Thomas J. Egan, and Leo Egan.

Leo Egan was appointed special administrator of his mother's estate. While some claim is made that the appointment of Egan as special administrator is significant in the decision of this case, we find that his appointment was only with regard to certain personal property and is not relevant to the decision in this case.

On May 3, 1951, Leo Egan filed and recorded a "statement of ownership" with the Sheridan County clerk, claiming that he had acquired equitable title to the Sheridan County land in question at the times it had been purchased by his mother in 1934 and 1935. The "statement of ownership" read as follows: "STATEMENT OF OWNERSHIP State of Nebraska, Grant

County, ss

"KNOW ALL MEN BY THESE PRESENTS: That the undersigned, Leo Egan, does hereby certify that he is the owner of and in possession of the following described real estate situated in Sheridan County, Nebraska, to-wit: South One-half (S ½) of Section Two (2); All of Section Ten (10) and North One-half (N ½) of Section Eleven (11), all located in and a part of Township Twenty-five (25) North, Range Forty-one (41), West of the Sixth Principal Meridian, Sheridan County, Nebraska, together with all the tenements, hereditaments and appurtenances thereunto appertaining, and in support of such claim of ownership does further state and represent:

"That the undersigned acquired equitable title to said real estate at the time said land was purchased from the former title holders notwithstanding the fact that such record title ownership was placed in the name of Elizabeth A. Egan in that the said Elizabeth A. Egan took title to said real estate in order to secure an indebtedness due her from the undersigned in the sum of $4000.00, being the purchase price of said real estate; that the said Elizabeth A. Egan loaned and advanced to the undersigned said purchase price, and by mutual agreement title to said real estate was placed in Elizabeth A. Egan pending the payment of said purchase price; that said deed to Elizabeth A. Egan was in truth and in fact a mortgage and not a deed of conveyance in so far as it conflicted with the rights of the undersigned;

"That the undersigned further certifies that he immediately went into possession of said real estate and every part thereof from and after the date that title to said real estate was placed in the name of Elizabeth A. Egan and continued in such possession for more than fifteen years last past claiming rights of ownership in said land adverse to all the world, and which claims were not contested by the said Elizabeth A. Egan although she was well aware such claims were being

made by the undersigned, the said Elizabeth A. Egan expressly representing to the undersigned that she would convey said real estate and place legal title in the undersigned as the owner thereof at any time he should pay said purchase price;

"That the undersigned further certifies that *there yet remains unpaid the principal sum of $4000.00 representing the purchase price, which said sum was due to Elizabeth A. Egan during her lifetime and is now due to her estate;* that the undersigned is ready, willing and able to pay said sum of $4000.00 to the heirs of Elizabeth A. Egan at any time upon demand of said heirs so to do;

"That the undersigned further makes this statement for the purpose of making legal showing as to his equitable interest in the land and for the purpose of apprising any person dealing in or with said land of the adverse claims the undersigned has in said real estate as the equitable title owner thereof notwithstanding the legal title to said real estate being in the said Elizabeth A. Egan.

"IN WITNESS WHEREOF, I have hereunto set my hand this 2nd day of May, 1951, at Hyannis, Grant County, Nebraska. /s/ Leo Egan." (Emphasis supplied.)

On March 11, 1952, Heelan filed and recorded a denial of Leo Egan's claim of ownership to the real estate with the Sheridan County clerk.

Mary Rock conveyed her interest in the real estate to Leo Egan on August 25, 1972, and Kathryn Bunner conveyed her interest in the land to Leo Egan Land Company, Inc., a successor to the interest of Leo Egan, on July 31, 1975, and their interests are not involved in this action. Leo Egan conveyed all of his interest in the land to Leo Egan Land Company, Inc., on June 10, 1975.

Egan concedes in its brief that during Elizabeth A. Egan's life Leo Egan's possession of the land could not have been termed adverse because it was under agreement with her. It argues, however, that after her death and the filing by Leo Egan of the statement of owner-

ship of property and tender of the purchase price to the heirs in 1951, the possession became adverse and 10 years thereafter ripened into ownership. The difficulty with that argument is that Egan fails to recognize that by Leo Egan's own statement his continued possession following his mother's death was still under his agreement with her. His affidavit specifically maintained that he had equitable title under a purchase agreement which, in the first instance, belonged to his mother and upon her death, according to his own affidavit, was held and owned by his mother's heirs.

In *Gramann v. Beatty*, 134 Neb. 568, 279 N.W. 204 (1938), we were presented with a case similar to the instant one. In *Gramann* certain property was purchased by two individuals in 1916. For 3 years they jointly operated a garage on the property. In 1919 one of the joint owners sold his interest to the other joint owner, under contract. The party to whom the property was sold contended that the selling partner had received compensation for the property over a period of years.

A dispute arose as to whether the consideration for the contract had indeed been paid, the selling partner maintaining that it had not and the buying partner claiming that it had.

The buying partner argued, however, that in any event he had been in possession of the land for more than 10 years and had acquired title by adverse possession. In rejecting such claim, this court said at 572-73, 279 N.W. at 206: "'It is a well settled general rule that where one enters into and holds possession of land under an executory contract of purchase or bond for title, his entry and possession are in subordination to, and not adverse to, the rights of the vendor or of those holding under him. In such case a privity exists which precludes the idea of a hostile tortious possession pending the completion of the contract which can silently ripen into title by adverse possession under the statute of limitations. * * * The vendee is equitably

estopped from claiming that the possession is adverse. * * * Where the entry is under such circumstances, the possession retains its subordinate character until payment or performance of all conditions by the vendee or until he surrenders the possession which he has had under the agreement or until he has distinctly and unequivocally repudiated the title of his vendor and such repudiation has been brought either expressly or by legal implication to the vendor's knowledge, or until execution of a conveyance by the vendor to the vendee terminating the executory character of their relationship.'"

In *Gramann* at 573, 279 N.W. at 206, we further cited with approval *Lanham v. Bowlby*, 86 Neb. 148, 125 N.W. 149 (1910): "'Where the purchaser of real estate under a verbal contract of sale is put in possession by the vendor under an oral agreement for the payment of the purchase price thereafter, the possession of the vendee will not become adverse until payment in full of the agreed consideration.'" Accord, *Tillson v. Holloway*, 94 Neb. 635, 143 N.W. 939 (1913).

Had Leo Egan, when he filed his "statement of ownership," contended that he no longer had any obligation under the purchase contract for whatever reason and was claiming adverse possession merely by virtue of his possession of the land, we might be presented with a different situation. That, however, is not the case. Leo Egan specifically acknowledged, when filing his statement of ownership, that he was holding under an executory contract which had not yet been fulfilled. His mere statement in his affidavit that he was willing to pay the purchase price did not constitute the payment of the consideration. His affidavit was simply an acknowledgment that he had come into possession under an executory contract which was not yet fulfilled. Under the recognized law, that statement of ownership was insufficient to start the time running to entitle Leo Egan to claim ownership by adverse possession.

The filing of the statement of ownership was insuf-

ficient to start the statute running in favor of Leo Egan and against Heelan. For that reason the judgment of the trial court finding that Egan had acquired title to the property by adverse possession was in error and must be reversed.

REVERSED AND REMANDED.

CLINTON, J., dissents.

WHITE, J., participating on briefs.