Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/13/2017 08:12 AM CDT

City of Lincoln, Nebraska, a political subdivision,
appellant, v. County of Lancaster,
a political subdivision, appellee.

___ N.W.2d ___

Filed July 21, 2017.    No. S-16-852.

1. **Judgments: Statutes: Appeal and Error.** Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.
2. **Insurance: Contracts.** The interpretation and meaning of an insurance policy is a question of law.
3. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's granting of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
4. **Political Subdivisions Tort Claims Act: Immunity: Waiver.** The Political Subdivisions Tort Claims Act allows a limited waiver of a political subdivision's sovereign immunity with respect to certain, but not all, types of tort actions.
5. ____: ____: ____. Claims against a political subdivision that are exempt from the waiver of sovereign immunity are set forth in Neb. Rev. Stat. § 13-910 (Reissue 2012).
6. **Appeal and Error.** To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error.
7. **Political Subdivisions Tort Claims Act: Legislature: Immunity: Insurance: Waiver.** Through enactment of Neb. Rev. Stat. § 13-916 (Reissue 2012), the Legislature allowed a political subdivision to waive immunity to some extent by purchasing liability insurance.

8. **Insurance: Contracts.** In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved.
9. **Negligence: Intent.** Where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen, and unintended.
10. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: Jodi Nelson, Judge. Affirmed.

Jeffery R. Kirkpatrick, Lincoln City Attorney, and Elizabeth D. Elliott for appellant.

Joe Kelly, Lancaster County Attorney, and Douglas D. Cyr for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Cassel, J.

## INTRODUCTION

Where a county obtains liability insurance, it waives sovereign immunity from claims covered by the insurance to the extent stated in the policy.[1] The district court granted summary judgment for a county based upon its policy's retained insurance limit. But because the county's policy did not cover the underlying event, there was no waiver of immunity regardless of the retained insurance limit. Albeit for a different reason, we affirm the district court's summary judgment.

## BACKGROUND

In this suit, the City of Lincoln (the City) sued the County of Lancaster (the County). A deputy sheriff with the County

---

[1] See Neb. Rev. Stat. § 13-916 (Reissue 2012).

"made physical contact" with a police officer employed by the City, who the deputy considered a friend. There is no dispute that the deputy intended the contact. The contact to the officer's shoulder was variously described, ranging from "lighter than a pat" "with an open palm" to a "closed fist punch." Unbeknownst to the deputy, the police officer had recently undergone surgery on the shoulder. The contact injured the officer's shoulder, and the City paid slightly more than $63,000 in workers' compensation expenses for those injuries.

At the time of the incident, the County had a retained limits insurance policy which included coverage for general liability. Under the general liability coverage part, for each occurrence the retained limit was $250,000 and the limits of insurance was $4,750,000. The policy provided that the retained limit was to be borne by the County as an uninsured amount.

The City sued the County for reimbursement of expenses paid on its employee's behalf. The County set forth a number of affirmative defenses, including that it was immune from suit and that it had not waived such immunity. It also affirmatively alleged that the Political Subdivisions Tort Claims Act (the Act)[2] did not apply because the claim arose out of a battery.

The City moved for partial summary judgment, alleging that the County's purchase of liability insurance effectively waived the County's immunity under § 13-916. The County subsequently moved for summary judgment in its favor.

The district court sustained the County's motion for summary judgment. First, the court determined that the City's negligence claim arose from a battery and was barred by the intentional torts exception under the Act. Second, the court decided that the County's procurement of insurance did not constitute a waiver of its sovereign immunity for the claim. The court observed that under the terms of the insurance policy, the insurer was obligated to pay only damages and claims

---

[2] See Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2012).

expenses in excess of the retained limit. The court concluded that the County's procurement of insurance did not constitute a waiver for claims less than $250,000. It reasoned that because the amount in controversy was $63,418.22, the County did not waive its sovereign immunity by obtaining insurance for claims exceeding $250,000.

The City filed a timely appeal, and we moved the case to our docket.[3] We subsequently ordered supplemental briefing, which we have considered in resolving this appeal.

## ASSIGNMENTS OF ERROR

The City assigns that the district court erred (1) by finding that there were no genuine issues of material fact and (2) by finding that the County was immune and did not waive its immunity when it purchased liability insurance.

## STANDARD OF REVIEW

[1,2] Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.[4] The interpretation and meaning of an insurance policy is a question of law.[5]

[3] An appellate court will affirm a lower court's granting of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[6]

## ANALYSIS

[4,5] The district court found that the City's claim arose from a battery and was barred by the Act's intentional torts

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[4] *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015).

[5] See *Drake-Williams Steel v. Continental Cas. Co.*, 294 Neb. 386, 883 N.W.2d 60 (2016).

[6] *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011).

exception. The Act allows a limited waiver of a political sub-division's sovereign immunity with respect to certain, but not all, types of tort actions.[7] Claims against a political subdivision that are exempt from the waiver of sovereign immunity are set forth in § 13-910.[8] One of those exemptions, the "intentional torts exception," provides that the Act shall not apply to "[a]ny claim arising out of . . . battery . . . ."[9]

[6] The City's opening brief did not specifically assign or argue that the court erred in finding that the City's claim arose from a battery. To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[10] As we have already summarized, widely varying terms were used to describe the touching—but they all described an intentional act. The City's opening brief did not challenge this characterization.

But in the City's supplemental brief, it now attempts to make an argument challenging the court's characterization of the touching as a battery. Making such an argument for the first time in a supplemental brief, as in a reply brief,[11] is improper. Viewing the evidence in the light most favorable to the City and giving it the benefit of all favorable inferences, we see no plain error in the court's finding. Because the claim arose out of a battery, the County is immune from the City's suit, unless it has otherwise waived its immunity.

[7] The City contends that the County waived its immunity by procuring liability insurance. Through enactment of § 13-916, the Legislature allowed a political subdivision to waive immunity to some extent by purchasing liability insurance. The statute provides:

---

[7] See *id.*

[8] See *Blaser v. County of Madison*, 288 Neb. 306, 847 N.W.2d 293 (2014).

[9] § 13-910(7).

[10] *State of Florida v. Countrywide Truck Ins. Agency*, 294 Neb. 400, 883 N.W.2d 69 (2016).

[11] See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014).

The governing body of any political subdivision . . . may purchase a policy of liability insurance insuring against all or any part of the liability which might be incurred under the . . . Act and also may purchase insurance covering those claims specifically excepted from the coverage of the act by section 13-910. . . . *The procurement of insurance shall constitute a waiver of the defense of governmental immunity as to those exceptions listed in section 13-910 to the extent and only to the extent stated in such policy*. . . . Whenever a claim or suit against a political subdivision is covered by liability insurance or by group self-insurance provided by a risk management pool, the provisions of the insurance policy on defense and settlement or the provisions of the agreement forming the risk management pool and related documents providing for defense and settlement of claims covered under such group self-insurance shall be applicable notwithstanding any inconsistent provisions of the act.[12]

Under our statute, the terms of the liability policy determine whether immunity is waived. The policy here does not explicitly state that it constitutes a waiver of immunity as to any claim.

The parties have framed the issue as whether immunity is waived where the claim falls within the political subdivision's retained limit or self-insured retention. But we need not reach that issue if the claim does not fall within the policy's insuring agreement.

[8] In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved.[13] A claim must fall within the policy's coverage, and an exclusion must

---

[12] § 13-916 (emphasis supplied).

[13] *Drake-Williams Steel v. Continental Cas. Co., supra* note 5.

not be applicable.[14] Before considering the effect of a retained limit or self-insured retention, we examine the terms of the policy to determine whether it provided coverage for a claim arising out of a battery.

The "Insuring Agreement" specifies under what circumstances the insurer is obligated to pay. The provision for the general liability coverage part states:

> The **Insurer** will indemnify the **Insured** for **Damages** and **Claim Expenses** in excess of the **Retained Limit** for which the **Insured** becomes legally obligated to pay because of a **Claim** first arising out of an **Occurrence** happening during the **Policy Period** in the Coverage Territory for **Bodily Injury**, **Personal Injury**, **Advertising Injury**, or **Property Damage** taking place during the **Policy Period**.

The insuring agreement requires that the claim arise out of an "occurrence." The policy defines an "occurrence" with respect to "bodily injury" as "an accidental happening" which results in "bodily injury." Although the policy does not define "accidental happening," an "accident" is defined as "an unintended and unexpected harmful event."

[9] Under the terms of the policy, the insuring agreement does not provide coverage for bodily injury resulting from an intentional act. Here, the claim arose out of a battery. "A harmful contact intentionally done is the essence of battery."[15] Because the contact is intentional, a battery cannot be an accidental happening. We have previously stated that "intentional acts by definition cannot be accidents."[16] And we have explained that "where acts are voluntary and intentional and the injury is the natural result of the act, the result was not

---

[14] See *id.*

[15] *Britton v. City of Crawford, supra* note 6, 282 Neb. at 382, 803 N.W.2d at 515.

[16] See *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 702, 625 N.W.2d 213, 217 (2001).

caused by accident even though that result may have been unexpected, unforeseen, and unintended."[17] As a matter of law, there was no "occurrence." And the parties agree in their supplemental briefs that a claim for battery does not fall within the insuring agreement. Because there was no coverage for the battery, the County did not waive its immunity for that claim.

For the sake of completeness, we note that the policy coverage for "personal injury" does not cover a claim arising out of a battery. The definition of "personal injury" states that it "means one or more of the following offenses" followed by a list of offenses. The enumerated offenses include a number of torts listed in the intentional torts exception of § 13-910(7), but battery is not one of them. Battery therefore does not fall within the definition of "personal injury."

[10] The City recognizes in its supplemental brief that if the claim arose from a battery, it is unnecessary for us to determine whether immunity is waived where a claim falls within the retained limit. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the case and controversy before it.[18] But the City nonetheless asks us to decide the question in the interest of judicial efficiency. Because the determination as to whether there is a waiver of immunity may depend on the language of a particular insurance policy, we decline to make some sort of blanket pronouncement.

We are not necessarily persuaded that the Legislature envisioned one political subdivision using the Act to sue another

---

[17] *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 206, 570 N.W.2d 320, 325 (1997). Cf. *Sullivan v. Great Plains Ins. Co.*, 210 Neb. 846, 854, 317 N.W.2d 375, 380 (1982) (stating that damage to vehicle, even though result of driver's own careless behavior, was still "an accident" within meaning of insurance policy).

[18] See *Anderson v. Union Pacific RR. Co.*, 295 Neb. 785, 890 N.W.2d 791 (2017).

subdivision. But we cannot find any provision of law that would prevent a political subdivision from doing so.

## CONCLUSION

Because the claim arose out of a battery and a battery is not an "occurrence" under the terms of the insurance policy, there was no possibility of any coverage for the claim under the policy. For reasons different from those stated by the district court, we conclude that the County's procurement of insurance did not constitute a waiver of immunity as to a claim arising out of a battery. We affirm the court's judgment.

AFFIRMED.

STACY, J., not participating.