IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF C.H. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF C.H. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

COLE H., APPELLANT.


Filed August 10, 2021.    No. A-20-933.


Appeal from the County Court for Otoe County: ROBERT B. O'NEAL, Judge. Affirmed.

Timothy S. Noerrlinger for appellant.

Jenniffer Panko-Rahe, Otoe County Attorney, and Joshua L. Christolear for appellee.


RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Cole H. appeals from an order of the county court for Otoe County, sitting as a juvenile court, which terminated his parental rights to his children, S.H., L.H., and C.H. On appeal, Cole challenges the court's findings that termination of his parental rights were warranted under Neb. Rev. Stat. § 43-292(1), (2), (6), and (7) (Reissue 2016) and that termination was in the children's best interests. For the reasons that follow, we affirm.

## BACKGROUND

Pam C. and Cole are parents of three children, S.H., L.H., and C.H. S.H. was born in 2013. L.H. was born in 2015. C.H. was born in 2017. S.H. and L.H. were originally placed in foster care in April or May 2015. The two older children lived with the foster family off and on over the course of the next 2 years. In July 2017 Pam tested positive for amphetamines at the time C.H.

- 1 -

was born. The State filed a petition against Pam alleging, as is relevant to this appeal, that S.H., L.H., and C.H. were juveniles as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Pursuant to an ex parte order, the children were, again, placed into foster care with the same family who had previously cared for them. The children have remained in foster care since that time. Pam admitted to the petition and eventually relinquished her parental rights to the children in 2019.

In June 2018, the State filed a motion to terminate Cole's parental rights alleging that Cole had abandoned the children for at least the 6 months immediately preceding the filing of its motion and that he had substantially neglected the children. The State filed an amended motion to terminate Cole's parental rights in April 2019 which added an allegation that the children had been in out-of-home placements for 15 or more months of the most recent 22 months. In May 2019, the State filed a supplemental petition adding an allegation that the children were juveniles as defined by § 43-247(3)(a) as related to Cole. Also in May 2019, the State filed an amended motion to terminate Cole's parental rights with the same allegations as the amended motion filed in April 2019. A hearing was held in August and September 2019 which Cole attended and ultimately, the court found that the children were juveniles within § 43-247(3)(a). However, in an order dated January 14, 2020, the court found that the State failed to meet its burden to show that Cole's parental rights should be terminated. On March 12, 2020, a dispositional order and case plan was adopted by the court which outlined steps for Cole to take in order to obtain reunification with the children.

In June 2020, the State again filed a motion to terminate Cole's parental rights alleging that Cole had abandoned and neglected the children and failed to correct the conditions leading to the determination that the children were juveniles under § 43-247(3)(a). The State also alleged that the children have been in an out-of-home placement for 15 or more months of the most recent 22 months.

A hearing to terminate Cole's parental rights was held on October 20 and November 10, 2020. At the hearing three witnesses testified, Robin Stevenson, a children and family services specialist with the Nebraska Department of Health and Human Services (DHHS), and the foster mother and father who the children have been currently placed with. Cole did not appear for either day of the hearing despite his attorney's intention to call him as a witness. As is relevant to this appeal, the following evidence was adduced:

Stevenson has been working as a caseworker with S.H., L.H., and C.H. since August 2017. Her testimony at the termination hearing primarily focused on the lack of communication and follow through from Cole during the entirety of the time she was assigned to the case. By the time of the 2020 hearing, S.H. was 7 years old, L.H. was 5 years old, and C.H. was 3 years old. During the 3 years that Stevenson had worked as a caseworker with the children, she had been successful in contacting Cole approximately five to seven times despite attempting to contact him at least one time per month since shortly after the current case was filed. She explained that when she was able to speak with Cole, she focused their conversations on educating him about the services he would need to avail himself of in order to reunify with the children. Cole at times expressed a desire to see the children. However, he would never follow through and actually meet with Stevenson so she could establish that he could provide a safe place at which visitations could take place. Stevenson rarely if ever was able to make direct contact with Cole when she attempted to call, text, or send Facebook messages to him. However, Cole would see her outside of court hearings and

would occasionally call and demand visitation. On these occasions, Stevenson would arrange a time for Cole to meet with her so that they could make arrangements for visitation. Cole would then fail to attend the arranged meeting. Documentary evidence corroborated Stevenson's testimony that Cole was contacted numerous times by DHHS but rarely responded.

Following the March 2020 dispositional hearing, Stevenson was able to meet with Cole and his attorney. She discussed the court's requirements that he undergo a co-occurring disorder evaluation, drug testing, and participate in parent-child psychotherapy with the children so as to smooth the reintroduction of Cole to the children since he had not seen the children in 3 years and had never met C.H. Visitation services were also arranged. Cole was required to contact the various providers in order to begin services, but failed to do so. He did not attend the evaluation which had been scheduled, and made no contact with any of the other providers. He never submitted to drug testing. Due to his failure to follow through with Stevenson, Cole did not visit with the children at any point during their time in foster care. Cole did pay child support for the children as ordered by the district court and eventually provided information to Stevenson about the health insurance policy under which the children were covered.

Stevenson also testified about her interactions with the children, S.H., L.H., and C.H. S.H. was diagnosed with post-traumatic stress disorder when she first went to foster care. She experienced "bizarre temper tantrums." However, after extensive therapy which also involved the foster mother, as well as the instigation of significant structure in her daily life, the tantrums subsided and then disappeared after Pam relinquished her parental rights and visitations with her ended.

The foster parents also testified. The children have been in their care intermittently since May 2015, when L.H. was only a week old and continuously since July 2017 when C.H. was born. The foster mother testified that when S.H. first came into their care, she would cry a lot and throw tantrums but this behavior has improved as she adjusted. The other children were both infants when they first entered foster care. The foster mother stated that the children are doing well in their care and in school. There are currently no behavioral concerns. Neither of the foster parents have received any communication from Cole during the time the children have been in their care. Cole lives somewhat near their home and at one time was employed by the foster father, but he has not visited or contacted either of them about setting up a visit with the children.

Following the termination hearing, the court entered an order terminating Cole's parental rights to S.H., L.H., and C.H. The court found that the State had met its burden of proving abandonment, substantial and continuous neglect, and that the children had been in out-of-home placement for 15 or more months out of the most recent 22 months pursuant to § 43-292(1), (2), and (7). The court also found that pursuant to § 43-292(6), Cole also failed to correct the conditions that led to the children being adjudicated under § 43-247(3)(a). The court further found that Cole was an unfit parent and that it was in the best interests of the children to have Cole's parental rights terminated. Cole timely appealed to this court.

ASSIGNMENTS OF ERROR

Cole assigns and argues that the county court erred in finding sufficient evidence to terminate his parental rights pursuant to § 43-292(1), (2), (6), and (7). He further assigns and argues

that there was not sufficient evidence to show that he is an unfit parent and that terminating his parental rights is in the best interests of the children.

## STANDARD OF REVIEW

In an appeal from an order terminating parental rights, an appellate court tries factual questions de novo on the record. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). Appellate review is independent of the juvenile court's findings. *Id.* When the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *Id.* In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's ruling. *In re Interest of Ryder J., supra.*

## ANALYSIS

*Statutory Factors.*

On appeal, Cole challenges the county court's finding that his parental rights should be terminated pursuant to § 43-292(1), (2), (6), and (7). He alleges that the State presented insufficient evidence to warrant termination of his parental rights under any of these subsections of § 43-292. Upon our review, we disagree with Cole's assertion.

In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Zachary D. & Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015). Only one statutory ground for termination need be proved in order for parental rights to be terminated. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

Cole argues that the court erred in utilizing § 43-292(7) as a statutory basis for terminating his rights. He concedes that the children had been placed in a foster home in July 2017 and have remained outside of both his and Pam's home throughout the proceedings, thus exceeding 22 months. However, he argues that the original motion to terminate parental rights was filed prior to "Cole's adjudication" and there has not been a 22-month window for him to rehabilitate himself. We disagree with Cole's characterization of the adjudication and his interpretation of § 43-292(7).

First, we note that it is not the parent that is adjudicated pursuant to § 43-247. Our Supreme Court addressed this issue in the case of *In re Interest of Devin W. et al.*, 270 Neb. 640, 707 N.W.2d 758 (2005). The court stated:

> Moreover, the Court of Appeals discusses "the lack of an adjudication as to" Lerry. *In re Interest of Devin W. et al.*, 13 Neb. App. at 403, 693 N.W.2d at 909. We disapprove of this language, which does not accurately reflect the purpose or substance of an adjudication proceeding. As stated above, pursuant to § 43-247, a child, not the parent, is adjudicated in order to protect the child's rights.

*Id.* at 654, 707 N.W.2d at 768. Second, § 43-292(7) provides for termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most

recent twenty-two months." Proof of this absence must be established by clear and convincing evidence. Then the State must further prove that termination of parental rights is in the child's best interests. See *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). Section 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of the parent. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Thus, the subsection becomes applicable whenever a child has been out of the home for 15 of the most recent 22 months. See *id.*

Cole premises his argument on his allegation that the original motion to terminate his parental rights was filed before any petition to adjudicate the children under § 43-247(3)(a) based on his conduct had been filed. Even if the order of filing created an issue, the original motion to terminate is not before us. The original motion to terminate was denied by order of the court on January 14, 2020. In the same order, the children were adjudicated under § 43-247(3)(a). The relevant motion to terminate parental rights presently before us was filed on June 3, 2020. Pursuant to the allegation in that motion, the State was required to show that the children had been in out-of-home placement for 15 of the most recent 22 months from the date the motion was filed. See *In re Interest of Jagger L., supra*. There is no dispute that the children have been in an out-of-home placement continuously for nearly 3 years at the time the motion to terminate was filed and there is no statutory requirement that the 22-month period commence following adjudication. Moreover, even if we were to weigh the equities of whether Cole was given the opportunity to rehabilitate himself during the 22-month period, the evidence demonstrates that Cole had ample opportunity to access services and place himself in a position to parent his children. He contacted Stevenson as early as October 5, 2017, knowing that the children were in State custody and began appearing at hearings as early as January 10, 2018. Counsel was appointed for him on July 18. Stevenson testified to multiple efforts to involve Cole with his children dating back to September 2017 and to having sporadic contacts with him throughout the pendency of the case. Therefore, Cole's claim that he was not given adequate time to rehabilitate himself is not supported by the record. There is clear and convincing evidence that the children had been in out-of-home placement for 15 of the most recent 22 months preceding the filing of the operative motion to terminate parental rights. Cole's arguments on this point fail.

Having determined that the statutory ground enumerated in § 43-292(7) has been proved, we do not consider issues relating to the sufficiency of the evidence concerning the other statutory provisions identified by the county court as grounds for termination or any issues related to the alleged error with respect to subsection 6. See *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000). See, also, *City of Lincoln v. County of Lancaster*, 297 Neb. 256, 898 N.W.2d 374 (2017) (appellate court is not obligated to engage in analysis that is not needed to adjudicate case and controversy before it).

*Best Interests of Children.*

Cole also assigns and argues that the county court erred in finding that he was an unfit parent and that it was in the children's best interests to terminate his parental rights. In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. § 43-292; *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). Because the parent's right to raise his or her children is constitutionally protected, the court

may terminate parental rights only when the State shows that the parent is unfit. *In re Interest of Isabel P. et al., supra*. There is a rebuttable presumption that the best interests of the children are served by having a relationship with their parent. *Id.* This presumption is overcome only when the State has proved that the parent is unfit. *Id.* Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

The best interests analysis and the parental fitness analysis are fact-intensive inquires. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). While both are separate inquiries, each examines essentially the same underlying facts. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). In cases where termination of parental rights is based on § 43-292(7), appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is in fact in the child's best interests. *In re Interest of Becka P. et al.*, *supra.*

In the present case, we find that there is clear and convincing evidence to show that Cole is unfit and that termination of his parental rights is in the best interests of the children. Throughout the case, Cole not only failed to show improvement in his parenting skills, he never placed himself in the position to demonstrate what, if any, parenting skills he possessed. He was repeatedly invited to meet with Stevenson regarding the steps he needed to take in order to have visits with the children. He not only failed to take these steps, but repeatedly failed to even attend the meetings that were arranged. He finally attended a meeting with Stevenson in April 2020 which allowed the caseworker to schedule an evaluation and arrange services. Cole did not follow through with any of the arranged services, all of which were required by the prior disposition and case plan established by the court. He failed to appear for his evaluation for co-occurring disorders, did not submit to drug testing, and did not comply with Stevenson's efforts to get him to attend sessions with a therapist and his children so as to ease their reintroduction to him. While Cole stated his desire to reestablish a relationship with his children, he made no tangible efforts to achieve that goal. Over the course of 3 years, he was given multiple opportunities to place himself in a position to visit with the children but did not even contact the foster parents, with whom he was acquainted, in order to check on his children's well-being or try to arrange visitation. There is no evidence of how Cole maintaining his parental rights would be beneficial to the children. Cole has not seen the children in 3 years. He has not had any contact with L.H. or C.H. during their lifetimes as they were both infants when they were placed in foster care. Based on the testimony of Stevenson, S.H. required therapy to help her with her diagnosis of post-traumatic stress disorder. The evidence in this case shows that she has shown marked improvement having been provided the care and structure in which she can grow and thrive. Cole's lack of willingness to take any steps toward establishing visitations with the children, despite living in close proximity to the foster home, demonstrates his level of interest in parenting his children.

Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). Cole has not placed himself in a position to parent his children or to even communicate with them. He

has been provided the roadmap to reestablishment of contact, communication and reunification, but has failed to take any initiative to start that journey. The children deserve stability in their lives and should not be suspended in foster care further while waiting on Cole to take even a first step toward a relationship with them. Accordingly, we agree with the findings of the county court that clear and convincing evidence exists to show that Cole is unfit to parent his children and that terminating his parental rights is in the children's best interests.

## CONCLUSION

Upon our de novo review of the record, we find that a statutory basis exists for termination of Cole's parental rights and that termination of his parental rights is in the children's best interests. Accordingly, the county court's order is affirmed.

AFFIRMED.